GRAND BEACH
ASSOCIATION, INC. et al.

v.

TOWN OF OLD ORCHARD
BEACH, et al.

Supreme Judicial Court of Maine.

Argued Sept. 18, 1986.
Decided Oct. 23, 1986.

Law Offices of Craig J. Rancourt, Bruce M. Read (orally), Biddleford, for plaintiffs.

Jeffrey Pidot, Asst. Atty. Gen., Augusta, amicus curiae.

Bernstein, Shur, Sawyer & Nelson, Christopher L. Vaniotis, Portland, for Town of Old Orchard Beach.

Murray, Plumb & Murray, E. Stephen Murray (orally), Peter S. Plumb, John C. Bannon, Portland, for William Danton.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

Defendant William M. Danton appeals from a judgment of the Superior Court (York County) reversing a building height variance granted to him by the Old Orchard Beach Zoning Board of Appeals ("Board of Appeals"). Defendant first challenges the court's ruling on the preliminary question of plaintiffs' standing to obtain judicial review of the action of the Board of Appeals. On the merits, defendant argues that the court erred in finding that the variance was improperly granted. We agree with the decision of the Superior Court and deny the appeal.

I.

The history of this case may be briefly summarized as follows: On December 11, 1984, defendant presented a proposal to the Old Orchard Beach Planning Board ("Planning Board") for a conditional use permit. The development plan contemplated the construction of a 70–foot structure containing 164 condominium units on beach front property on which defendant held an option to purchase. The original proposal submitted to the Planning Board called for the demolition of the "Snow Mansion"—a residence located on the property.

On February 12, 1985, a public hearing was held on this proposal. The Grand Beach Association, Inc., and Oscar Pluznick were present at the hearing and were represented by an attorney. The Association is a private, nonprofit corporation whose members include residents and landowners on Grand Beach, the site of the development. Counsel for the Association stated that the plaintiffs, as neighboring residents or landowners, were concerned about increased density, traffic, and noise. Plaintiff Pluznick, owner of abutting property, had additional problems with shadows that would be cast by the proposed building on his property. At the hearing, at least one citizen expressed disapproval of the plan to demolish the Snow Mansion and the chairman of the Planning Board also stated his concern about the demolition of the house. At this point, defendant's attorney volunteered to come back to the Planning Board with a second plan designed to save the building.

On March 26, 1985, a second public hearing was held and a new plan was presented. The development now called for a building 140 feet high—twice as high as permitted by the applicable zoning regulation—and allowed preservation of the Snow Mansion. On April 11, 1985 the Planning Board voted 3 to 2 to grant approval to the

second plan subject to defendant's obtaining a building height variance from the Zoning Board of Appeals.

The Board of Appeals held a public hearing on the variance request on April 22, 1985 and plaintiffs appeared and participated. Before the Board defendant argued that the variance was necessary because the Planning Board required the preservation of the residence. Defendant presented appraisal testimony to the effect that the first plan calling for the destruction of the Snow Mansion, and the second plan calling for preservation of the Snow Mansion and the construction of a 140 foot building, would both yield $3,260,000. The testimony suggested, however, that a plan that saves the Snow Mansion and stays within the building height requirements would yield $2,140,000. Defendant argued that without the variance necessary to implement the second plan, he would be denied a reasonable return on the land. The Board of Appeals also heard from plaintiffs' attorney who reiterated their concerns of increased traffic, noise, and shadows on the abutting property. At the conclusion of the hearing, the Zoning Board voted 4 to 1 to grant the variance.

Plaintiffs filed a complaint for review of the actions of both the Planning Board and Board of Appeals pursuant to M.R.Civ.P. 80B on May 10, 1985. The Superior Court affirmed the Planning Board's issuance of the conditional use permit but reversed the variance granted by the Board of Appeals. Defendant now appeals the judgment of the Superior Court as it relates to the variance.

## II.

First we address the preliminary question of the plaintiffs' standing. 30 M.R.S.A. § 2411(3)(F) (1978) allows any party to appeal a decision of a Zoning Board of Appeals. "Party status involves a twofold showing: (1) the appellant must have been a party before the Board and (2) the appellant must demonstrate that he will suffer a particularized injury as a result of the Board's action." *Harrington v. Inhabitants of Town of Kennebunk*, 459 A.2d 557, 559 (Me.1983).

In the present case, there is no dispute that plaintiffs were parties before the Board of Appeals. Defendant contends, however, that plaintiffs have not met the second prong of the test. He claims there has been no demonstration of a particularized injury. Initially it is important to note that we have not required a high degree of proof of a particularized injury in our efforts to ensure that judicial review of administrative action is afforded only to proper parties. In *Leadbetter v. Ferris*, 485 A.2d 225 (Me.1984), plaintiffs challenged a proposed addition to a commercial building that would enable the business to accept increased deliveries at early morning hours. *Id.* at 226. Plaintiffs were abutting landowners who alleged that increased use of the loading dock would disturb guests in the motel on plaintiffs' land. We found that the allegation was "sufficient to show *a potential for particularized injury.*" *Id.* at 227. (emphasis added). At hearings before the Planning Board and the Board of Appeals in the present case, the Association offered testimony from various members of the community that illustrated their concerns about increased traffic, shadowing on the beach, and incompatibility of the project with the community. Evidence presented by plaintiff Pluznick, the only plaintiff who owned abutting property, showed that the building would cast shadows on his property.

The facts in the present case are functionally identical to the facts presented in *Lake Environmental Association v. Town of Naples*, 486 A.2d 91 (Me.1984). The plaintiffs in that case were a nonprofit corporation, some of whose members owned property abutting the lake on which the proposed subdivision was located, and one individual who owned land abutting the proposed subdivision. At Board meetings, both plaintiffs claimed that the planned development of a campground in the subdivision "would result in extremely high den-

sity which could harm the owners of land near the campground." *Id.* at 93. We held that the "appearances before the Board coupled with their allegations of particularized injury are sufficient to give plaintiffs standing." *Id.* The same rationale persuades us that both of the plaintiffs in the present case had sufficient standing to seek review of the action of the Board of Appeals.[1]

### III.

The standard of review for the variance decision permits relief only if we find an abuse of discretion, an error of law, or findings not supported by substantial evidence on the record. *Driscoll v. Gheewalla*, 441 A.2d 1023 (Me.1982). Neither the Superior Court nor this Court is entitled to substitute its judgment for that of the Board and must only review the record to determine whether there is evidence to support the Board's conclusion. *Mack v. Municipal Officers of the Town of Cape Elizabeth*, 463 A.2d 717, 720 (Me.1983). We agree with the Superior Court, however, that the Board incorrectly applied legal standards and improperly granted the variance.

The statutory basis for granting a variance is set forth at 30 M.R.S.A. § 4963(3) (Supp.1985) and provides as follows:

3. **Variance.** A variance may be granted by the board only where strict application of the ordinance, or a provision thereof, to the petitioner and his property would cause undue hardship. The words "undue hardship" as used in this subsection mean:

A. That the land in question cannot yield a reasonable return unless a variance is granted;

B. That the need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. That the granting of a variance will not alter the essential character of the locality; and

D. That the hardship is not the result of action taken by the applicant or a prior owner.

A municipality may, in a zoning ordinance, adopt additional limitations on the granting of a variance, including, but not limited to, a provision that a variance may only be granted for a use permitted in a particular zone.

The record in this case does not demonstrate "that the land in question cannot yield a reasonable return unless a variance is granted." 30 M.R.S.A. § 4963(3)(A). Before the Board of Appeals, defendant erroneously premised his claim of undue hardship on the notion that the Planning Board had required the preservation of the Snow Mansion as a condition to granting approval to the development plans. The record does not support this conclusion. Relying on the erroneous premise, he then argued that unless the height of the building was doubled, the preservation of the Snow Mansion would reduce the allowable number of condominium units from 163 to 107. The appraisal testimony suggested that the 163 units proposed under the second plan would yield $3,260,000 to the landowner while 107 units would yield $2,140,000. Defendant argues that the $1,120,000 difference in return makes the lesser amount an unreasonable return. We disagree.

We have previously noted that 30 M.R.S.A. § 4963(3)(A) does not serve to ensure a maximum return on land. In *Barnard v. Zoning Board of Appeals of the Town of Yarmouth*, 313 A.2d 741, 749 (Me.1974), we stated that "appellant need not be accorded every conceivable opportunity to maximize her return, or potential return." A more recent case, stands for the proposition that "reasonable return is

---

1. While defendant's appeal was pending before *this* Court, a suggestion of Oscar Pluznick's death was made upon the record pursuant to M.R.Civ.P. 25(a)(1). We conclude that the absence of Oscar Pluznick as a party at this point is not crucial because the Association alone has sufficient standing to defend this appeal from the Superior Court.

not maximum return." *Curtis v. Main,* 482 A.2d 1253, 1257 (Me.1984). In short, the fact that the variance would permit defendant to increase his return does not, in any way, support the conclusion that the land cannot yield a reasonable return unless a variance is granted. The record in this case falls far short of demonstrating that strict application of the building height restriction would result in the practical loss of all beneficial use of the land. *See Thornton v. Lothridge,* 447 A.2d 473 (Me. 1982).

The entry is:

Judgment of the Superior Court affirmed.

All concurring.