STATE OF MAINE                          SUPERIOR COURT
WALDO, SS.                              Docket No. AP-00-3

JLH – WAL- 2|28|2001

Conservation Law Foundation, Inc. et al.

STATE OF MAINE
Waldo County Superior Court

FEB 2 8 2001

REC'D AND FILED
Joyce M. Page, Clerk

v.                    **ORDER**

Town of Lincolnville et al.


Pending before the court is the motion for summary judgment filed by defendants James Munroe and Richard Nightingale (collectively, "Munroe"). In his motion, Munroe contends that, as a matter of law, neither plaintiff has standing to pursue their appeal from a decision of the Lincolnville Planning Board, approving the movants' application for a proposed subdivision on Route 1 in Lincolnville.[1]

## A. Procedural posture of motion for summary judgment

None of the parties' submissions on the pending motion satisfies the requirements of M.R.Civ.P. 7(d) and 56. Munroe's rule 7(d) statement of material fact merely incorporates by reference interrogatory answers submitted by each of the two plaintiffs. His statement of material fact thus falls short of the requirement governing the contents of such a filing. Further, the plaintiffs' submission does not even include a statement of material fact, despite the clear requirements of the rules governing

---

[1] The movants had also filed a motion for trial on the facts. See M.R.Civ.P. 80B(c). The issue that Munroe seeks to try is whether the plaintiffs have standing to bring this appeal under M.R.Civ.P. 80B. At oral argument on the motion for summary judgment, however, Munroe withdrew his motion for that trial. Thus, the summary judgment motion alone remains pending.

1

summary judgment motion practice. Rather, the plaintiffs have attempted to supplement the record on summary judgment with an affidavit of their attorney, to which is appended a lengthy document relating to the nature and purposes of plaintiff Conservation Law Foundation, Inc. ("CLF").

Despite these procedural shortcomings, the court will proceed to a consideration of the merits of the motion. Neither party contests the other's formulation of the evidence, and Munroe has withdrawn his motion for trial of the facts pertinent to the plaintiffs' standing. Consequently, in combined effect, the parties have submitted the standing issue on a stipulated record. Ordinarily, a decision on the question of standing is considered as part of the final decision on the merits of the appeal. See, e.g., Rowe v. City of South Portland, 1999 ME 81, 730 A.2d 673. Submission of the standing issue alone thus represents a de facto bifurcation of that question from the merits. Neither party has challenged this approach as part of the pending motion.[2] Thus, in this order, the court will address the question of whether, on this factual record, the plaintiffs have standing to pursue their rule 80B appeal.

Additionally, although the parties did not raise the issue, Munroe's motion requires consideration of whether, as part of a rule 80B appeal, it is proper for the parties to present evidence on the question of standing. Here, Munroe does not seek to present evidence in support of an independent claim for relief. (Indeed, Munroe is the appellee in this proceeding.) See Baker's Table, Inc. v. City of Portland, 2000 ME 7, ¶ 9, 743

---

[2] In their objection to the now-withdrawn motion for trial of the facts, the plaintiffs did not oppose the concept of establishing some type of record that would allow the development of facts, although they advocated an alternative to a conventional trial.

2

A.2d 237, 240-41. However, "subsidiary claims" to an appeal are subject to evidential development in the Superior Court. Id.; see, e.g., Boisvert v. King, 618 A.2d 211, 214 (Me. 1992) (a trial on the facts was permitted on the timeliness of an appeal).

In order to establish standing to challenge municipal action in court, the appellant "must have participated in the hearing and must demonstrate a particularized injury caused by" the municipality's decision. Rowe v. City of South Portland, 1999 ME 81, ¶ 3, 730 A.2d 673, 674. While an appellant's participation in the administrative proceeding is generally revealed by a conventional record on appeal, that party's particularized injury may not be apparent from the record. Here, for example, under the Town's ordinance, a member of the public did not have to establish "particularized injury" in order to participate in the municipal proceeding. Rather, it appears that the Board's hearing was open to any member of the public. See TOWN OF LINCOLNVILLE SUBDIVISION ORDINANCE § IV(A) (1999). Thus, the factual basis for a party's standing need not appear in the record, and it therefore appears to be a proper area for evidential development in the Superior Court.

Summary judgment motions and fact-grounded adjudications are not appropriate vehicles for the resolution of issues on appeal. Martin v. Unemployment Insurance Commission, 1998 ME 271, ¶ 10, 723 A.2d 412, 416. In the case at bar, however, Munroe's challenge to the plaintiff's standing requires the court to act in two capacities: as a fact-finder to determine, as a factual matter, whether the plaintiffs do have standing to pursue this challenge to the Town's decision; and, if the plaintiffs have standing, as an appellate entity to review the municipality's action. To the

3

extent that the parties call on the court to determine the question of standing, the procedures associated with its fact-finding role -- including the summary judgment motion practice -- should be available.

## B. Record on summary judgment

Plaintiff Christopher W. Osgood ("Osgood") has been a resident of Lincolnville since 1974. Osgood's property does not abut the Munroe parcel that is the subject of the proposed subdivision. Between 1985 and 1987, he was a member of the "Lincolnville Route 1 Citizens' Committee," which was a group of residents who lived on Route 1 in Lincolnville. That committee "provided input" to the Maine Department of Transportation regarding the state's plans to reconstruct that road. Osgood also participated in a "Local Action Committee" comprised of residents of nearby municipalities, which addressed issues also relating to Route 1. Beginning in 1995, he served on a formal municipal committee (the "Lincolnville Route 1 Committee"), established under the Town's ordinances, that was responsible for working with local residents and governmental representatives in designing the Route 1 corridor through Lincolnville. The committee's work included "particular focus" on maintaining the Town's scenic and historical qualities. At least in part as a result of the committee's work, agencies responsible for the redesign of Route 1 deviated from their standard model to accommodate "the unique and outstanding visual aspects" of the Munroe property. The Town created access to allow pedestrians, bicyclists and motorists to "enjoy the scenic qualities" created by the parcel.

Osgood has been a member of the municipal committee responsible for the promulgation of a comprehensive plan. In that capacity, his duties

4

included the creation of an inventory and map of "scenic assets" in the Town, to allow those areas particular treatment and protection in the Towns' zoning ordinances. The Munroe property was identified and included as one of those assets.

Osgood was a member of the Town's Land Use Committee between 1993 and 2000. Among other things, that committee proposed ordinances that assisted governmental agencies in their roadway design approach noted above.

Further, Osgood participated in efforts to raise public and private funds that could be used specifically to purchase the Munroe property.

Osgood further contends that, during his regular trips on Route 1 past the Munroe property, he benefits personally from the scenic views associated with it because of his appreciation of the "scenic and natural beauties of the coastline and waters" and the "scenic views and natural beauty of Munroe's Field . . . ."

Osgood argues that municipal approval of the subdivision has injured his past efforts to protect the local natural environment. He also has expressed concern that approval of the subdivision violates the Town's agreement with the state Department of Transportation that the Town would continue to protect the area surrounding Route 1.[3] He also expresses concern that the value of his own property will diminish if the subdivision is approved, because that approval -- in his view -- violated the local zoning ordinances.

---

[3] The record contains little or no independent evidence of an agreement between the Town and DOT. Munson, however, does not challenge the admissibility, see M.R.Civ.P. 56(e), of Osgood's hearsay narrative regarding this issue. Thus, the court considers this fact.

The other plaintiff in this action, CLF, is a Massachusetts corporation. It relies entirely on the notion of associational standing as a basis for its participation in this proceeding. In support of this theory of standing, it relies on the separate standing of Osgood and of another individual, Corelyn Senn. Senn is a Lincolnville resident. At oral argument, the parties stipulated that she lives more than one-half mile from the Munroe property. She decided to take up residence in Lincolnville and open a business there in part because of the local views of Penobscot Bay, including the view associated with the Munroe property. As with Osgood, Senn regularly drives by the parcel. Senn finds the view of and over the Munroe property to be "critical to her spiritual and emotional well being."

She holds concerns that the subdivision would change the Town's character, which in turn could persuade her to move to another location. She also is concerned that the proposed development will hurt her business (a boarding facility for cats) because the area would be less appealing for actual and prospective customers. Senn is involved in several environmental organizations.

CLF is a New England environmental law organization that was founded in 1966. One of its interests is "protecting the scenic characteristics of the Maine coast and the public's rights of visual access to those resources."

Both Osgood and Senn attended and participated at many of the Town's Planning Board meetings where the subdivision application was considered. In their complaint, the plaintiffs allege that the Board ultimately approved the application on January 26, 2000. Osgood and Senn first became members of CLF on February 11, 2000.

## C. Standing of plaintiff Christopher W. Osgood

The Town's ordinance provides that "[a]ny aggrieved party having proper standing may appeal any decision of the Planning Board under this ordinance to the Superior Court of Waldo County, within thirty (30) days." TOWN OF LINCOLNVILLE SUBDIVISION ORDINANCE § XI. For purposes of appeals in zoning cases, a "party" "'must have participated before the board and must make a showing of a particularized injury.'" Rowe, 1999 ME 81, ¶ 3, 730 A.2d at 674 (citation omitted) (construing 30-A M.R.S.A. § 2691, which governs appeals from municipal zoning boards of appeals).

A comparable concept that governs standing of a party who seeks judicial review of administrative action under the Administrative Procedures Act, 5 M.R.S.A. § 11001 et seq., requires a showing that the governmental action "must actually operate prejudicially and directly upon a party's property, pecuniary or personal rights." Storer v. Department of Environmental Protection, 656 A.2d 1191, 1192 (Me. 1995). A "particularized injury" is one that is "in fact distinct from the harm experienced by the public at large." Ricci v. Superintendent, Bureau of Banking, 485 A.2d 645, 646 (Me. 1984) (APA). "Particularized injury for abutting landowners can be satisfied by a showing of 'the proximate location of the abutter's property, together with a relatively minor adverse consequence if the requested variance were granted.'" Rowe, 1999 ME 81, ¶ 4, 730 A.2d at 674 (citation omitted). However, non-abutters are not required to present "a high degree of proof of a particularized injury" in order to establish standing. Grand Beach Association, Inc. v. Town of Old

Orchard Beach, 516 A.2d 551, 553 (Me. 1986).[4]

Munroe argues here that Osgood has not demonstrated a "particularized injury" sufficient to give him standing to pursue this appeal.

> As abstract and general as injury to the environment may seem, it is well settled that such injury is sufficient to support standing as to any plaintiff who used the affected environment. The Supreme Court first went out of its way to recognize such standing in dictum, and then confirmed it by the decisions in Sierra Club v. Morton [405 U.S. 727, 31 L.Ed.2d 636 (1972)] and United States v. Students Challenging Regulatory Agency Procedures [412 U.S. 669, 37 L.Ed.2d 254 (1973)]. Later cases have reconfirmed the conclusion that standing is easily available both to protect the natural environment, even against injuries that seem remote and slight, and to protect the urban environment against changes in its physical or demographic composition. To be sure, a few cases can be found that deny standing for failure to show any injury whatever, or for failure to show that any injury was caused by the challenged act. . . . Nonetheless, standing to protect the environment is thoroughly entrenched. . . .

13 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3531.8 at pp. 527-31 (2d ed. 1984) (footnotes omitted).

Maine law is consistent with this approach. In Fitzgerald v. Baxter State Park Authority, 385 A.2d 189 (Me. 1978), the plaintiffs brought suit to prevent the Baxter State Park Authority from cleaning a portion of the

_____

[4]The plaintiffs in Grand Beach Association were Oscar Pluznick, who owned land that abutted the site of the proposed development, and Grand Beach Association, Inc. itself. 516 A.2d at 552. The members of the organization were residents or landowners on the beach, which was the proposed site. Id. None of those members, however, was an abutter. Id. While the Law Court appeal was pending, Pluznick died. In light of this, the Court held that the Association's standing was sufficient to allow the case to go forward. Id. at 554, n.1. Thus, the legal principle relating to the degree of proof needed to establish standing must be seen to apply to the non-abutter members of the Association.

Park where a timber blowdown had occurred. To establish their standing, each of the five individual plaintiffs alleged that he regularly used the park for recreational and perhaps professional pursuits, and that he intended to continue that activity. Id. at 195. The Law Court considered two independent grounds for standing: the interest of citizens to enforce the terms of a charitable public trust, and the plaintiffs' particular use of the Park. Leaning heavily on the Supreme Court's analysis in Sierra Club v. Morton, the Law Court found that the Fitzgerald plaintiffs had standing because "of their use and enjoyment of Baxter State Park and its resources." Id. at 197. This constituted "a direct and personal injury by the plaintiffs to their interest in Baxter State Park which, although not an economic interest in the sense of involving their livelihood or financial liability, is nonetheless worthy of the protection of the law." Id.

Munroe argues that Fitzgerald is inapposite because in that case the land at issue was public in nature. However, this contention is weakened by the basis for the Court's holding: rather than resting on the charitable public trust, the Court held that the plaintiffs had standing because of their use and enjoyment of the resource. Thus, the Court's analysis focused on the land's significance in the lives of the plaintiffs, rather than its public nature. If the Court's conclusion rested on the trust, then Munroe's argument would be more persuasive, because his property interests here are not subject to limitations on that basis.

Further, the federal notion of standing, on which Fitzgerald rests, is not limited to public lands or lands with public access. See, e.g., Students Challenging Regulatory Agency Procedures, 412 U.S. at 686-87, 37 L.Ed.2d at 269-70 (railway rate increase would allegedly cause decrease in use of

recycled goods and therefore deplete natural resources (presumably the result of private commercial activity), affecting plaintiff's enjoyment of environment); <u>National Wildlife Federation v. Agricultural Stabilization and Conservation Service</u>, 955 F.2d 1199, 1203-05 (8th Cir. 1992) (plaintiffs, who lived four miles from the site at issue, had standing to challenge permit that allowed farmers to drain wetlands, when plaintiffs hunted on the wetlands and enjoyed the "aesthetic beauty" of the site); <u>Neighborhood Development Corp. v. Advisory Council on Historic Preservation</u>, 632 F.2d 21, 23-24 (6th Cir. 1980) (plaintiffs' "use" of the aesthetic and architectural features of commercial buildings was sufficient to create standing to challenge demolition permit); <u>Port of Astoria v. Hodel</u>, 595 F.2d 467, 476 (9th Cir. 1979) (residents who live, work and "spend leisure time" in area affected by construction of power plant had standing to challenge contract); <u>Concerned About Trident v. Rumsfeld</u>, 555 F.2d 817, 822 n.10 (D.C. Cir. 1977) (party who had an "aesthetic, conservational and recreational" interest in nuclear submarine system site had standing to challenge location of the site); <u>Coalition for the Environment v. Volpe</u>, 504 F.2d 156, 167-68 (8th Cir. 1974) (parties had standing to challenge private development which allegedly would affect open views and the "aesthetic and psychological benefit" of the land's existing condition).

Osgood's interest in this case and the nature of his alleged injuries are sufficient to establish his standing. He argues that he has a strong aesthetic and environmental interest in the Munroe property. This contention is supported by a history of participation in efforts to protect the views associated with that land, to enhance those benefits and, in fact, to acquire the property so that it could be dedicated to public use. The

record shows that Osgood has used the land by actively appreciating its aesthetic benefits. He did so individually and also as a municipal representative through his efforts to enhance public access, by means of pedestrian and bicycle ways, that would allow others to enjoy the environmental features created by the Munroe property. Osgood's concerns about the effect of the proposed subdivision on the value of his own property appears speculative. However, the aesthetic and environmental value he demonstrably has attached to the property goes materially beyond a "general policy interest" that, by itself, is inadequate to establish standing. See Penobscot Area Housing Development Corp. v. City of Brewer, 434 A.2d 14, 18 (Me. 1981). The court concludes that the potential injury alleged by Osgood meets the threshold needed for standing.

Munroe further argues that any aesthetic injury sustained by Osgood is not "particularized," because it is one to which all members of the public would be exposed. ". . .[S]tanding is not to be denied simply because many people suffer the same injury . . . . To deny standing to persons who are in fact injured simply because many others are injured, would mean that the most injurious and widespread Government action could be questioned by nobody." Students Challenging Regulatory Agency Procedures, 412 U.S. at 687-88, 37 L.Ed.2d at 270. See also Sierra Club, 405 U.S. at 738, 31 L.Ed.2d at 645 (recognizing a trend "discarding the notion that an injury that is widely shared is ipso facto not an injury sufficient to provide the basis for judicial review. . . . Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the

11

many rather than the few does not make them less deserving of legal protection through the judicial process."). Further, from this record, the court cannot and does not infer that all persons would be injured as Osgood and Senn (through CLF) allege. Rather, they allege that the proposed development would expose them to, in effect, particularized injury because of the importance they allege the Munroe property has to them. Thus, that some others may be affected in the manner that Osgood alleges for himself is not a basis to deny him standing in the circumstances of this case.

## D. Standing of Conservation Law Foundation, Inc.

If Osgood has standing to proceed as a party in this action, then the question of CLF's standing loses significance. See Bowen v. Kendrick, 487 U.S. 589, 620 n.15, 101 L.Ed.2d 520, 548 (1988). Nonetheless, as an alternative to the question of Osgood's standing, the court addresses Munroe's challenge to CLF's allegation of standing.

In the complaint, CLF alleges that it has "associational standing" to pursue the appeal from the Town's decision and that it does so on behalf of it members who are residents of Lincolnville, who participated at the municipal hearings and who will suffer particularized injury as a result of the Town's actions. See amended complaint at ¶ 2. The record on summary judgment establishes that CLF's standing is predicated on the interests of two members, Osgood and Senn. Osgood, however, is a party to this action in his own right. CLF has not provided authority or persuasive argument to justify any associational standing on behalf of Osgood, when Osgood is a participant in this action and is thus in a position to assert his claims and protect his interests directly. Thus, the question presented here is whether CLF may proceed in its capacity as a representative of

12

Senn's interests.

As a general matter, "[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 180, 145 L.Ed.2d 610, 627 (2000).[5]

Munroe contends that because Senn did not become a member of CLF until after the municipal proceedings had been completed, CLF cannot now proceed on her behalf because the associational relationship did not exist at the time when one of the elements of standing (active participation at the municipal level) must be established.[6] The parties have cited no authority dispositive of this narrow and unique issue, and the court's research has revealed no such authority on point.

A party's standing is determined on the basis of the circumstances that exist when suit is commenced. See Sims v. State of Florida, 862 F.2d 1449, 1458 (11th Cir. 1989). For example, an organization does not have associational standing if the purportedly represented persons do not

---

[5] Separate from associational or representative standing, an organization may also bring suit in its own right based on injuries that it would sustain itself. In that circumstance, the organization must satisfy the same requirements of standing that apply to individuals. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79, 71 L.Ed.2d 214 (1982). Here, CLF does not purport to establish standing on this independent basis.

[6] Munroe makes the same argument with respect to associational standing based on Osgood's interests. The court does not address this aspect of Munroe's contention because, for the reasons noted in the text, CLF may not proceed as a representative of Osgood, because Osgood himself is a party.

become members until after the period of limitations expires, even if the organization itself commenced the action in a timely way. Petro-Chem Processing, Inc. v. Environmental Protection Agency, 866 F.2d 433, 436-37 (D.C. Cir. 1989); see also American Petroleum Institute v. Environmental Protection Agency, 216 F.3d 50, 64 (D.C. Cir. 2000); but see Newark Branch, National Association for the Advancement of Colored People v. City of Clifton, Civ. A. No. 89-3238, 1990 WL 238665, at *4 (D.N.J. Dec. 27, 1990) (an organization that lacks standing when the action is commenced may subsequently attain standing by recruiting members who confer standing on the organization).

Sims is procedurally distinctive from the case at bar because it did not involve an appeal from an administrative proceeding. Rather, that case was a direct challenge to the constitutionality of a statute. However, this distinction does not lead to a different result. Munroe argues that CLF does not have standing here because of the absence of any relationship between the organization and Senn when Senn participated in the municipal proceedings. However, associational standing is not grounded on the association's independent standing. Instead, it is derivative of the member's standing: under the Friends of the Earth formulation, the organization is not required to demonstrate that its own interests are at stake. Rather, at least one member must be able to establish standing just as if that member proceeded individually, and the representative association must have some connection to the issues to be addressed in the judicial proceeding.

Further, the question of standing is raised only as part of the judicial proceeding. The municipal board's public hearing allows participation

14

both by persons who would have standing in court and also by those who would not have such standing. So long as the represented member participates at the municipal level (and also demonstrates particularized injury), the association need not do so. Rather, the association's standing in court will rise and fall with the member's own standing.

Thus, the court is persuaded that even where, as here, the judicial proceeding constitutes an appeal from governmental action, associational standing must be established at the time that lawsuit is commenced. As examined in federal authorities, the concept of standing is both constitutional and prudential in origin. The participation of a party with standing ensures that a court will be presented with a "case and controversy," in satisfaction with the constitutional element of jurisdiction. In that way, advocacy by a party with standing provides assurance that that party will be motivated to address the contested issue with seriousness and maturity, because that party has a real interest at stake. See generally Clinton v. City of New York, 524 U.S. 417, 429, 141 L.Ed.2d 393, 408 (1998). See also Students Challenging Regulatory Agency Procedures, 412 U.S. at 687, 37 L.Ed.2d at 269 (". . . .[T]he party seeking review [must] be himself among the injured, for it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders."); Baker v. Carr, 369 U.S. 186, 204, 7 L.Ed.2d 663, (1962) (to have standing, a party must allege "such a personal stake in the outcome of the controversy as to assure that concerted adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult

constitutional questions.").

The purposes underlying the notion of standing are satisfied when an organization represents the cause of a member who would have standing as an individual, even if that membership relationship did not exist when the dispute originated or when the member laid the pre-suit groundwork for eventual litigation. If the member herself participated in the underlying proceeding and is exposed to particularized injury, then the formation of the representative relationship at some later date, but prior to the commencement of legal action, will not compromise the purposes of the standing requirement.

Therefore, to determine whether CLF has standing, the court must consider whether Senn herself would have standing.[7] The standing analysis applicable to her is governed by the principles of law discussed in connection with Osgood's allegation of standing. The court reaches a similar result. The present record demonstrates that Senn, a Lincolnville resident, "uses" the property because she passes by it regularly and because its unique physical characteristics are "critical" to her spiritual and emotional fulfillment. The importance of the property is further revealed by its role in her decision to move to Lincolnville from some other location. Although Senn has not been involved in public activity geared toward the preservation and protection of the Munroe property as Osgood has, her allegation of particularized injury bears sufficient support in the present

-------------------------------------------------------

[7]Munroe does not challenge CLF's standing on basis of the remaining two elements under Friends of the Earth. Thus, the court does not address whether Senn's interests are germane to CLF's underlying purposes and whether the relief sought by CLF would not require Senn to participate individually in this action, see id., 528 U.S. at 180, 145 L.Ed.2d at 627, except to note that these two elements appear to be satisfied here.

16

record to establish her standing, if she were to proceed in her individual capacity.[8]  Her theoretical standing therefore confers actual standing on the representative organization, CLF.

The entry shall be:

For the reasons set out in the order dated February 26, 2001, the motion for summary judgment filed by defendants Munroe and Nightingale are denied.  Their motion for trial of the facts is withdrawn. The court finds that plaintiffs Osgood and CLF have standing.

Pursuant to the scheduling order dated June 30, 2000, the defendants shall file their brief on appeal within 20 days.

Dated:   February 26, 2001

_____
JUSTICE, SUPERIOR COURT

---

[8]In concluding that Senn would have standing if she proceeded individually in this actino, the court does not rely on her speculation that her business interests would be compromised if the Munroe property were developed.

Date Filed __Feb. 11, 2000__ _____Waldo_____ Docket No. __AP-00-003__
County

Action____80B Appeal_____

                                    JAMES MUNROE and RICHARD NIGHTINGALE,
                                    added as Defts. 3/6/2000
CONSERVATION LAW FOUNDATION, INC. and    THE TOWN OF LINCOLNVILLE and THE
CHRISTOPHER W. OSGOOD                     LINCOLNVILLE PLANNING BOARD
                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Peter Shelley, Esq. and<br>Carol A. Blasi, Esq.<br>120 Tillson Avenue<br>Rockland, Maine 04841-3416<br>594-8107 | Wayne R. Crandall, Esq. for Munroe and<br>P.O. Box 664        and Nightingale<br>Rockland, Me. 04841-0664<br>594-4421<br><br>Terry W. Calderwood, Esq. for Lincolnvi<br>P.O. Box 616<br>Camden, Maine 04843<br>236-3325 |

| Date of Entry | |
|---|---|
| 02/11/00 | Complaint dtd. Feb. 11, 2000, filed.<br>Summary Sheet, filed. |
| 02/11/00 | Notice and Briefing Schedule to attys. Shelley and Blasi. |
| 02/15/00 | Amended Complaint dtd. Feb. 15, 2000, filed.  Summary Sheet, filed. |
| 02/25/00 | Summons dtd. Feb. 15, 2000 with Acknowledgement of Receipt of Summons and Amended Complaint by Joshua Day, Town Administrator on Feb. 22, 2000, filed.  ( Acceptance on behalf of Town of Lincolnville and another on behalf of Lincolnville Planning Board.) |
| 03/03/00 | Written Consent of atty. Wayne R. Crandall, Esq. to/ amend the first amended complai dtd. March 2, 2000, filed. |
| 03/03/00 | Written Consent of atty. Terry W. Calderwood, Esq. to/ amend the first amended complaint dtd. March 2, 2000, filed. |
| 03/06/00 | Second Amended Complaint dtd.  March 2, 2000, filed. |
| 03/10/00 | Wayne R. Crandall, Esq. enters his appearance for Defts. James Munroe an Richard Nightingale.<br>Copy Briefing Schedule to atty. Crandall. |
| 03/13/00 | Answer, Affirmative Defenses to Plffs' First Amended Complaint and Secor Amended Complaint dtd. March 10, 2000, filed.<br>Copy Briefing Schedule to atty. Calderwood. |
| 03/22/00 | Record and Brief, filed by Plffs.  (Record includes maps) |
| 03/27/00 | Motion for Limited Discovery and Shortened Response Time on Issue of Standing (Rule 80B(j) dtd. March 24, 2000, filed by defts. Munroe and Nightingale. |
| 03/29/00 | Summons dtd. March 7, 2000 showing service of Second Amended Complaint on Town of Lincolnville on March 13, 2000, filed. |

STATE OF MAINE
WALDO, SS.

SUPERIOR COURT
Docket No. AP -00-3
AMM - WAL - 6/27/2001

CONSERVATION LAW
FOUNDATION, INC., et als.,
            Appellants,

        )
        )
        )
        )
        )

        v.

        )
        )

**DECISION AND JUDGMENT**

        )
        )
        )

STATE OF MAINE
Waldo County Superior Court

JUN 27 2001

REC'D AND FILED
Joyce M. Page, Clerk

TOWN OF LINCOLNVILLE,
et als.,
            Respondents.

        )
        )
        )
        )

    In this Rule 80B Complaint, Appellants seek the remand of this matter to the Town of Lincolnville Planning Board for further hearing on the requirements of Section I(H) of the Town of Lincolnville Subdivision Ordinance.[1] The Record reflects that the Planning Board granted final subdivision plan approval on January 26, 2000 to the subdivision being developed by Respondents Munroe and Nightingale. The Appellants fault the process in the following particulars: that the proposed development does have an undue adverse effect on the view over Munroe Field and the "view corridor" does not change this result; that the Planning Board lacks evidence in the record to support its findings; that the developers did not negotiate the easement as required by the Planning Board's edict; that the Planning Board failed to reconcile its Ordinance with its Comprehensive Plan by not preserving the unique views available from Munroe's Field; that the Board failed to require evidence of the effect of the development on the view; that the Board failed to hold adequate public hearings on the issues. Further, the constitutionality of the Section I(H) and 30-A MRSA §4404(8) have been discussed as a collateral issue to these proceedings.

_____

    [1] - Subsection I(H) provides that any subdivision "...not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites or rare and irreplaceable natural areas or any public rights for physical of visual access the shoreline."

Appellate review in this matter is complicated to a degree by the fact that the final approval uses the language: "...the...easement... mitigates the undue adverse effect of the proposed development on the view..." (emphasis in original). This sentence seems to presuppose that an undue adverse effect on the view continues despite being mitigated to some degree. If this is the case, the proposed plan should not (and could not) have been approved. However, a closer look suggests that the use of the word "mitigated" was simply an unartful choice of words.

Ordinarily, mitigate means to lessen severity. It does not necessarily suggest that the severity of the condition is completely eliminated - although that could be the case. In this matter, when the problematic paragraph is read[2] in conjunction with the preceding one, it is clear that the Planning Board is using the word "mitigate" in the sense of eliminating, not simply reducing, any undue adverse effect.

The record establishes that an enormous amount of evidence was received as part of the approval hearing process. A "scenic impact analysis" was undertaken in some fashion as part the deliberative process. Appellants suggest that some manner of expert testimony was required on this scenic impact analysis as a sine qua non of the subdivision approval process. While it is feasible that an engineer, landscaper, or artist might testify regarding their opinion of how the view might appear after construction, and how the view from the road is obstructed, this court does not perceive their testimony as a mandatory part of the hearing process.

Members of the Planning Board received a number of charts, exhibits, and photographs which allow them to project how the final view will appear. Given this fact, and the fact that the members have taken a view and are otherwise well familiar with the property, the court is satisfied that they are well qualified to make this judgment call with or without expert testimony.

A review of the record establishes that evidence exists to support the findings made by the Planning Board in its final approval. The Appellants attack various aspects of the evidence and suggest that the probative value of the evidence was of little or no value. Without reciting the evidence, item by item, the court is satisfied that Record contains evidence which is

---

2 - See Tab 83, pages 4-5 of the Record.

more than sufficient to support the Board's findings. The findings are sufficiently developed and clear as to allow appellate review.

The court perceives no conflict between the Town's Comprehensive Plan and Subdivision Ordinance. The use of an easement to preserve views where development is undertaken is anticipated by both documents.

A public hearing was held on September 9, 1988. Evidence was taken. Parties were permitted to speak. After the denial of the plan was appealed to the Superior Court, a remand sent the case back to the Planning Board to reconsider. The remand did not require additional hearings. Indeed, it suggests that the reconsideration be upon the existing record. However, public comment was accepted at the December, 1999, reconsideration. The Planning Board did not fail to allow appropriate public hearing and comment.

It is not clear to the court whether any true "negotiation" took place regarding the view corridor easement. Indeed, it is not clear precisely who was to be negotiating. In this instance, the developers proposed the subject view corridor as an easement to the Town, and the Town elected to accept it (subject to public referendum). It can be credibly argued that this state of affairs satisfied the self-imposed requirement of "negotiation," and the court declines to conclude otherwise.

The court is satisfied that the Lincolnville Subdivision Ordinance and 30-A MRSA §4404(8) do not run afoul of state or federal constitutional mandates of clarity. In this matter, the fact that the subject property has unique and valuable visual properties is uncontroverted. Likewise, the parties agree that constructing structures near the shoreline will impede some lines of sight. Accordingly, the issue is not so much the subjective aesthetics of the situation (as in those cases where ordinances have been held unconstitutionally vague), as the availability of an unobstructed view of the vista. The Ordinance and statutory provisions are not unconsitutionally vague.

Upon these circumstances, the court affirms the issuance of final subdivision approval by the Planning Board.

**The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).**

Dated:   June 22, 2001

_____
CHIEF JUSTICE, SUPERIOR COURT

Date Filed Feb. 11, 2000     Waldo     Docket No. __AP-00-003__

County

Action __80B Appeal__

JAMES MUNROE and RICHARD NIGHTINGALE,
added as Defts. 3/6/2000

CONSERVATION LAW FOUNDATION, INC. and    THE TOWN OF LINCOLNVILLE and THE
CHRISTOPHER W. OSGOOD             LINCOLNVILLE PLANNING BOARD

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Peter Shelley, Esq. and | Wayne R. Crandall, Esq. for Munroe and |
| Carol A. Blasi, Esq. | P.O. Box 664      and Nightingale |
| 120 Tillson Avenue | Rockland, Me. 04841-0664 |
| Rockland, Maine 04841-3416 | 594-4421 |
| 594-8107 | |
| | Terry W. Calderwood, Esq. for Lincolnvill |
| | P.O. Box 616 |
| | Camden, Maine 04843 |
| | 236-3325 |

| Date of Entry | |
|---|---|
| 02/11/00 | Complaint dtd. Feb. 11, 2000, filed.<br>Summary Sheet, filed. |
| 02/11/00 | Notice and Briefing Schedule to attys. Shelley and Blasi. |
| 02/15/00 | Amended Complaint dtd. Feb. 15, 2000, filed. Summary Sheet, filed. |
| 02/25/00 | Summons dtd. Feb. 15, 2000 with Acknowledgement of Receipt of Summons and Amended Complaint by Joshua Day, Town Administrator on Feb. 22, 2000, filed. ( Acceptance on behalf of Town of Lincolnville and another on behalf of Lincolnville Planning Board.) |
| 03/03/00 | Written Consent of atty. Wayne R. Crandall, Esq. to/first amended complaint amend the dtd. March 2, 2000, filed. |
| 03/03/00 | Written Consent of atty. Terry W. Calderwood, Esq. to/first amended amend the complaint dtd. March 2, 2000, filed. |
| 03/06/00 | Second Amended Complaint dtd. March 2, 2000, filed. |
| 03/10/00 | Wayne R. Crandall, Esq. enters his appearance for Defts. James Munroe and Richard Nightingale.<br>Copy Briefing Schedule to atty. Crandall. |
| 03/13/00 | Answer, Affirmative Defenses to Plffs' First Amended Complaint and Second Amended Complaint dtd. March 10, 2000, filed.<br>Copy Briefing Schedule to atty. Calderwood. |
| 03/22/00 | Record and Brief, filed by Plffs. (Record includes maps) |
| 03/27/00 | Motion for Limited Discovery and Shortened Response Time on Issue of Standing (Rule 80B(j) dtd. March 24, 2000, filed by defts. Munroe and Nightingale. |
| 03/29/00 | Summons dtd. March 7, 2000 showing service of Second Amended Complaint on Town of Lincolnville on March 13, 2000, filed.<br>Summons dtd. March 7, 2000 showing service of Second Amended Complaint on James Munroe on March 28, 2000, filed.<br>Summons dtd. March 7, 2000 showing service of Second Amended Complaint on Richard Nightingale on March 28, 2000, filed. |