1997 ME 203

**David L. BROOKS**

v.

**CUMBERLAND FARMS, INC.**

Supreme Judicial Court of Maine.

Argued Sept. 2, 1997.

Decided Oct. 16, 1997.

David L. Brooks (orally), North Berwick, for plaintiff.

Paul W. Cadigan (orally), Reagan, Adams & Cadigan, Kennebunk, for Defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Cumberland Farms, Inc. appeals from the judgment entered in the Superior Court (York County, *Fritzsche,* J.) vacating the decision of the North Berwick Zoning Board of Appeals approving setback variances pursuant to the North Berwick Zoning Ordinance and 30–A M.R.S.A. § 4353(4)(1996). Cumberland contends (1) that the court erred by determining that David L. Brooks, whose personal residence and professional office are directly across the street from the subject property, has standing to seek review of the Board's decision pursuant to Maine Rule of Civil Procedure 80B, and (2) that the court erred in holding that the Board committed an error of law in approving the setback variances. We disagree with Cumberland's contentions and affirm the judgment.

I.

[¶ 2] David L. Brooks is an attorney whose home and law practice are located directly across the street from a property now owned by Elaine Perkins Spence and Fred Perkins, Jr. in North Berwick. Cumberland seeks to purchase the Perkins property, which is located on a main road in North Berwick and which abuts residential properties on both sides, and to renovate it for operation as a convenience store with gasoline pumps.

[¶ 3] The only buildings now on the Perkins property are a repair garage, an uninhabited multi-unit apartment building, and a convenience store. Until recently, the Perkins sold gasoline from three fuel dispensers in front of the convenience store. The fuel dispensers, along with five underground storage tanks (USTs) located on the property, are no longer in use. In addition to various permitted and conditional uses authorized by the North Berwick Zoning Ordinance,[1] the property also enjoys two grandfathered nonconforming uses: retail gasoline sales and repair garage.

[¶ 4] As part of its proposed project, Cumberland seeks to replace the five existing USTs with two modern USTs of equivalent storage capacity; to erect a canopy that would house fire suppression equipment; and to move the store's sign onto the property from its current location in the State's right-of-way. Because the Perkins property is adjacent to and across from residential properties, three setback variances from the

---

1. The Perkins property is located in a "Limited Commercial" zone. According to the North Berwick Zoning Ordinance Land Use Tables, permitted uses for properties in such zone include personal services, variety/convenience store, clubs not serving alcohol, business enterprise, agricultural business, and solid waste recycling facility. Conditional uses include home occupation, eating and drinking establishments, eating establishments, restaurants, adult businesses, lodging, bed and breakfast, and professional and administrative services. NORTH BERWICK, ME, ZONING ORDINANCE art. 4 (1995).

North Berwick Zoning Ordinance are required to make these proposed changes.[2]

[¶ 5] In mid–1995 Cumberland filed a variance application with the North Berwick Zoning Board of Appeals for the proposed USTs, canopy, and sign.[3] At a public hearing to consider the application in December 1995, Cumberland argued that, pursuant to the applicable law, the gasoline sales could continue only if the existing USTs were replaced with more modern USTs. Directing the Board's attention to the variance application's Financial Information Supplement,[4] it further argued that the Perkins' existing business had been unprofitable for four of the last five years; that the apartment building would require a significant capital infusion to make it habitable; and that the property currently did not produce a reasonable rate of return.

[¶ 6] Brooks also appeared before the Board, arguing that 30–A M.R.S.A. § 4353's criteria for the granting of a variance had not been satisfied. To support his contention that beneficial use of the property could exist without the variances, he directed the Board's attention to the zoning ordinance's Land Use Table, which listed permitted and conditional uses not requiring variances.[5]

[¶ 7] After the hearing the Board approved Cumberland's variance application for the proposed USTs, canopy, and sign. Brooks filed a complaint for review of governmental action pursuant to Maine Rule of Civil Procedure 80B. Following two remands by the Superior Court to the Board for clarification of the Board's decision,[6] the court

---

2. First, because the Perkins property abuts residential lots on both sides, it is subject to a 100–foot side setback requirement pursuant to Article 4, Table 4.3 of the North Berwick Zoning Ordinance. The property is less than 200 feet wide; thus, the two side setback requirements overlap and prevent Cumberland from replacing the USTs and erecting the canopy without a variance. Second, because the front of the Perkins property abuts a residential lot (i.e., the Brooks property across the street), Table 4.3 of the Ordinance requires a fifty foot front setback. Cumberland's proposed canopy and USTs would be located about sixteen and thirty feet, respectively, from the front property line. Finally, section 5.2.6.b.5 of the Ordinance provides that no sign may be located within fifteen feet of any travel way or lot line. Cumberland proposes to place its sign about four feet from the boundary line and about ten feet from the street.

3. This variance application marked the culmination of protracted efforts by Cumberland to obtain the town's permission to proceed with the project. In 1995 Cumberland applied for a building permit with the town's code enforcement officer (CEO), which was denied. After filing an unsuccessful administrative appeal of the CEO's decision with the Board, Cumberland revised its proposal and submitted a second building permit application with the CEO. The CEO again denied the application. Cumberland then filed an administrative appeal of the CEO's second building permit denial, as well as a variance application, with the Board. The Board denied the administrative appeal, but approved the variance application, which is now the subject of this appeal.

4. The Financial Information Supplement states, inter alia, that the Perkins property is currently assessed at $199,770; that a reasonable return on the property would be about $16,000; that

the Perkins' existing business had reported ordinary trade or business losses between about $7,200 and $3,100 in four of five recent years; that the apartment building is presently not fit for habitation; and that a conservative estimate of the cost to renovate the apartment building is $15,000 to $20,000.

5. Brooks testified at the December 1995 hearing:

[I]f the lots were vacant, or even if you consider the buildings that are there presently, I would suggest to you that in the land use chart in the zoning ordinance, shows a whole host of uses that this property would sustain: single-family residence, two-family dwelling, multi-family dwelling, double-wide motor home, personal services—as in a home occupation—neighborhood variety or convenience store, clubs not serving alcohol, business enterprise—another form of home occupation—and the list goes on.... I would ask our code enforcement officer here to correct me on that, if I am mistaken.... Roger, may I ask you that question, would those be permitted use in that zone?

Code enforcement officer: Yes, they would.

Some conditional, some permitted. See also note 1 supra.

6. When documenting its decision to grant the variance, the Board inadvertently completed a form pertaining to variances for residential structures. To cure this defect, the court properly remanded the case to the Board with orders to promptly clarify or substitute its decision. Pursuant to this order, the Board held a non-evidentiary hearing in April 1996 at which it recorded its December 1995 vote on a new Notice of Decision that conformed with 30–A M.R.S.A. § 4353's criteria. Because Brooks was not notified of the April 1996 hearing, the court granted his motion to vacate the Board's decision and

concluded that the Board had erred in not finding that there are other beneficial uses of the property without the variance and vacated the Board's decision. Cumberland now appeals that adverse decision.

## II.

[¶ 8] Before reaching the merits of Cumberland's appeal, we must consider the preliminary question of Brooks' standing to challenge the Board's decision. Pursuant to 30–A M.R.S.A. § 2691(3)(G) (1996), any party may appeal the decision of a local zoning board of appeals in accordance with Maine Rule of Civil Procedure 80B. The two-pronged test of "party" status for the purposes of section 2691 is now well-established: An appellant must have participated before the board, and must make a showing of a particularized injury. *See Forester v. City of Westbrook,* 604 A.2d 31, 32 (Me.1992) (citing *Harrington v. City of Biddeford,* 583 A.2d 695, 696 (Me.1990); *Singal v. City of Bangor,* 440 A.2d 1048, 1050 (Me.1982)).

[¶ 9] In the present case, there is no dispute that Brooks participated before the Board. Cumberland contends, however, that Brooks failed to demonstrate adequately that he will suffer any particularized injury as a result of the Board's decision. Noting that Brooks objects to the overall project and not to the specific variances, Cumberland argues that Brooks has failed to demonstrate that the UST, canopy, and sign variances themselves, viewed in isolation and apart from the overall project, will cause him any particularized injury.

[¶ 10] Cumberland's argument is unpersuasive. An abutting landowner need not establish a high degree of proof of partic-

ularized injury.[7] *See Grand Beach Ass'n v. Town of Old Orchard Beach,* 516 A.2d 551, 553 (Me.1986). Rather, "when the person who has appeared before the board is an abutter, a reasonable allegation of a potential for particularized injury is all that is necessary to establish the real controversy required for adjudication in a court." *See Christy's Realty Ltd. Partnership v. Town of Kittery,* 663 A.2d 59, 61–62 (Me.1995) (quoting *Pearson v. Town of Kennebunk,* 590 A.2d 535, 537 (Me.1991)). "The proximate location of the abutter's property, combined with a relatively minor adverse consequence if the requested variance were granted, ... sufficiently demonstrates a potential for particularized injury." *Forester,* 604 A.2d at 32.

[¶ 11] In this case, Brooks presented evidence to the Board that the proposed Cumberland Farms project would cause his property's value to depreciate, and that the project would destroy the peacefulness of the neighborhood by its late hours of operation.[8] The overall project is facilitated by the specific variances in question. Given the proximity of his property, Brooks' allegations of decreased property value and increased noise comport with our Rule 80B standing requirements for abutters, and adequately establish the potential for a "minor adverse consequence" if the variances are granted. *See id.*

## III.

[¶ 12] In an appeal from the Superior Court's appellate review of actions taken by a municipal board of zoning appeals, we examine the record developed before the board to determine whether the board abused its discretion, committed an error of law, or made findings not supported by sub-

---

remanded the case for a second time. Pursuant to this order, the Board held a second non-evidentiary hearing in June 1996 after notice to Brooks, and once again clarified its decision. *See Brown v. Town of Wells,* 402 A.2d 57, 59 (Me.1979) ("Generally speaking, the function of the Superior Court in a Rule 80B proceeding is to review findings made by administrative bodies; if the rationale supporting the administrative decision is unclear, the proper procedure is to remand the case for further clarification under the authority of M.R.Civ.P. 80B(c).") (citing 2 R. FIELD, V. MCKUSICK, L. WROTH, MAINE CIVIL PRACTICE § 80B.6 (1977 Supp.)).

7. Although the Brooks property is directly across the street from and not adjacent to the Perkins property, Brooks is nevertheless an abutter. *See, e.g., Marashlian v. Zoning Board of Appeals of Newburyport,* 421 Mass. 719, 660 N.E.2d 369, 372 (1996) (including as "abutters" owners of property across the street from a proposed development).

8. In addition to his testimony, Brooks submitted as exhibits an affidavit and a written summary of his argument.

stantial evidence in the record. *See H.E. Sargent, Inc. v. Town of Wells,* 676 A.2d 920, 923 (Me.1996). We may not substitute our judgment for that of the board. *See Anderson v. Swanson,* 534 A.2d 1286, 1288 (Me.1987) (citing *Grand Beach Ass'n,* 516 A.2d at 554). Because we conclude that there was insufficient evidence to support the Board's conclusion that the property cannot yield a reasonable return unless the variances are granted, we affirm the court's decision vacating the Board's ruling.

[¶ 13] Pursuant to 30-A M.R.S.A. § 4353(4), a board of appeals may grant a variance only on a finding that the strict application of a zoning ordinance would cause undue hardship. To establish undue hardship, the variance applicant must prove each of the following:

A. The land in question cannot yield a reasonable return unless a variance is granted;

B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. The granting of a variance will not alter the essential character of the locality;

D. The hardship is not the result of action taken by the applicant or a prior owner.

30-A M.R.S.A. § 4353(4)(1996).[9] *See Leadbetter v. Ferris,* 485 A.2d 225, 227 (Me.1984)(burden is on variance applicant to prove the statutory requirements have been met).

[¶ 14] In construing the "reasonable return" prong of the hardship test set forth in section 4353, we have required an applicant to show that denial of the variance will result in the "practical loss of *all* beneficial use of the land." *See, e.g., Greenberg v. DiBiase,* 637 A.2d 1177, 1179 (Me.1994) (emphasis added) (quoting *Perrin v. Town of*

Kittery, 591 A.2d 861, 863 (Me.1991)). Our application of this requirement to section 4353 variances has been consistent and unwavering; a zoning regulation imposes undue hardship within the meaning of section 4353 only if the property subject to the regulation cannot yield a reasonable return from *any* permitted use. *See, e.g., Twigg v. Town of Kennebunk,* 662 A.2d 914, 918–19 (Me.1995) (quoting 3 R. Anderson, American Law of Zoning § 20.17 (3d ed.1986)); *Forester,* 604 A.2d at 33 (vacating board's approval of variance because applicant failed to submit evidence to establish the property would not yield a reasonable return without the variance).

[¶ 15] Cumberland urges us to adopt a less stringent standard in this case, advancing the novel argument that the "practical loss" standard should not be applied where an applicant seeks a variance to *continue* an existing nonconforming use, rather than to create a new or expanded use. In support of its position, Cumberland emphasizes that the continued use of the property for nonconforming gasoline sales is contingent upon compliance with state-mandated modernization requirements, including the installation of new USTs. To install the new USTs required by state law, Cumberland needs a variance from the town's zoning ordinance.

[¶ 16] We are unpersuaded that the circumstances of this case require a modified undue hardship standard.[10] In fact, the strict application of the "practical loss" standard is appropriate in this case, given our view that "[t]he spirit of the zoning ordinances and regulations is to restrict rather than increase any nonconforming uses, and to secure their gradual elimination." *Town of Windham v. Sprague,* 219 A.2d 548, 552 (Me.1966) (quoting 101 C.J.S. Zoning § 182). Although government-mandated modernization of gasoline stations, including the instal-

9. The North Berwick Zoning Ordinance requires an applicant to demonstrate the same four criteria. NORTH BERWICK, ME., ZONING ORDINANCE art. 6.7.2(2) (1995).

10. In May 1997 the Legislature approved "An Act to Establish Practical Difficulty Standards for a Variance from the Dimensional Standards of a Municipal Zoning Ordinance." 1997 P.L. ch.

148 (effective May 7, 1997). The Act amends 30-A M.R.S.A. § 4353(4) to allow municipalities to adopt an ordinance that permits a board to grant a variance from the dimensional standards of a zoning ordinance when strict application of the standard would cause "practical difficulty" (rather than "undue hardship"). The Act is not applicable to this case.

lation of new storage tanks, may cause some property owners to cease retail gasoline sales because they cannot obtain variances required for the modernization, we perceive no injustice in this result when the owner retains other viable uses of the property.

[¶ 17] Applying the "practical loss" standard to this case, we conclude that the Board erred in determining that the property cannot yield a reasonable return without the variance. Although Cumberland presented evidence that the existing business was operating at a loss, and that the apartment building would require a significant capital infusion to make it habitable, the Board was also presented with undisputed evidence that the property has numerous permitted and conditional uses for which a variance would not be required. "Reasonable return" is not tantamount to "maximum return." *Perrin*, 591

A.2d at 863. There is nothing in the record to support even an implicit finding by the Board that Cumberland had met its burden of showing that the property could not yield a reasonable return from *any* use allowed by the zoning ordinance, or that the expense of establishing such an allowed use would be prohibitive. The court did not err in vacating the Board's approval of the setback variances.[11]

The entry is:

Judgment affirmed.

---

**11.** Brooks argues that Cumberland's appeal is frivolous and asks us to consider the imposition of sanctions pursuant to M.R.Civ.P. 76(f). An appeal is frivolous if the record does not show that the issues raised by the appellant have any merit whatsoever and the appellant could not reasonably believe that the appeal has any chance of success. *See International Silver Co. v. DiGirolamo*, 475 A.2d 1143, 1145 (Me.1984). Because we find that the issues raised on appeal by Cumberland were made in good faith and were meritorious, we decline to invoke Rule 76(f).