2000 ME 180

**Steven SAHL et al.**

v.

**TOWN OF YORK et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 27, 2000.
Decided Oct. 24, 2000.

Robert E. Mongue, Kennebunk, for plaintiffs.

Peggy L. McGehee, John S. Upton, Perkins, Thompson, Hinckley & Keddy, P.C., Portland, for E.F.H., Inc. and the Hugheses.

Durward W. Parkinson, Bergen & Parkinson, LLC, Kennebunk, for Town of York.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] E.F.H., Inc., Peter and Patrick Hughes (collectively, the Hugheses), and the Town of York appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) vacating the decision of the York Zoning Board of Appeals (ZBA) which had authorized the Hugheses to complete a motel expansion. The Hugheses contend that the Superior Court erred in holding that (i) the Sahls and the Crafts, owners of residential property near the motel, had standing to sue; and (ii) the ZBA erred in determining that the Hugheses' right to complete construction had vested. Because there is sufficient evidence in the record to support the ZBA's determination that the Hugheses' right to complete construction of the motel had vested, we vacate the judgment.

## I.  CASE HISTORY

[¶ 2] E.F.H., Inc. owns and operates the Cuttysark Motel located on Long Beach Avenue in York. Peter and Patrick Hughes are shareholders in E.F.H., Inc. The Sahls and the Crafts own residential property across the street from the motel. Their properties and the motel do not share a common boundary.

[¶ 3] In 1991, the Town issued a shoreland permit [1] and other permits to allow construction activities at the motel. The shoreland permit contained no expiration date. In 1995, the Town encouraged and approved phased construction of the motel project to minimize the impact of the construction on the Town. The Town Code Enforcement Officer (CEO) testified that phasing the project was "very attractive" to the Town because it allowed more work

---

1.  The record does not contain the 1991 ordinance requiring the issuance of a shoreland permit prior to the commencement of construction activity.

space for the project and would entail less soil disturbance than if the project was undertaken in one stage. Phase I of the construction was completed in 1995, and a temporary occupancy permit was issued. Work on Phase II of the project has not started.

[¶ 4] On November 4, 1997, the Town amended its zoning ordinance to require that work on all shoreland permits issued before May 9, 1992 had to be completed by November 5, 1998.[2] The Hugheses determined that they could not start and finish Phase II under the new deadline. In October 1998, the CEO advised the Hugheses to delay work on the project and to seek administrative relief from the ZBA.

[¶ 5] In December 1998, the Hugheses filed an application with the ZBA seeking a determination either that the CEO erroneously interpreted the amended ordinance, or that the ZBA grant them a variance from the ordinance's requirements. In February 1999, the ZBA conducted a public hearing at which the Hugheses' counsel, the CEO, and counsel for the Sahls and Crafts made presentations. The Sahls and Crafts claimed that the expanded motel would obstruct their view of the ocean, and that they would be adversely affected by the additional traffic. The CEO testified that the Hugheses were unaware of the amended ordinance prior to its enactment.

[¶ 6] The ZBA initially voted to affirm the decision of the CEO but to grant the variance. Subsequently, the ZBA reconsidered both decisions. At the reconsideration hearing in March 1999, the ZBA rescinded the variance but granted the appeal, concluding that the CEO erred in requesting that the Hugheses defer building plans. In its findings of fact, the ZBA concluded that the building permit was issued in 1991 and that the permit had no expiration date, that phasing for the construction was approved in 1995 to minimize the impact of the construction on the Town, and that if construction on Phase II had commenced after the amended ordinance was passed, the Hugheses would not have been able to complete the project within one year. The Sahls and the Crafts appealed the ZBA's decision to the Superior Court pursuant to M.R. Civ. P. 80B.

[¶ 7] In February 2000, the Superior Court entered a judgment vacating the ZBA's decision to grant the Hugheses' appeal. The court concluded that: (1) both the Sahls and the Crafts had standing; (2) under the plain language of the ordinance the shoreland permit had lapsed; and (3) the ordinance would not be superseded by the doctrine of vested rights. This appeal followed.

## II. STANDING

[¶ 8] Pursuant to Maine law governing appeals from municipal boards, "[a]ny party may take an appeal, within 45 days of the vote on the original decision, to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B." 30–A M.R.S.A. § 2691(3)(G) (1996). To challenge the decision of a municipal zoning board of appeals, a party must "(1) have appeared before the board of appeals; and (2) be able to demonstrate a particularized injury as a result of the board's action." *Sproul v. Town of Boothbay Harbor,* 2000 ME 30, ¶ 6, 746 A.2d 368, 371–72 (quoting *Rowe v. City of South Portland,* 1999 ME 81, ¶ 4, 730 A.2d 673, 674–75). If the appealing party is an abutter, the threshold requirements to establish standing are minimal. *See Sproul,* 2000 ME 30, ¶ 6, 746 A.2d at 371 (stating that abutters need allege only "a potential for particularized injury to satisfy the standing requirement"); *Pearson v. Town of Kennebunk,* 590 A.2d 535, 537 (Me.1991) ("When the person who has appeared before the board

---

**2.** The amended ordinance provides that "[f]or all Shoreland Permits issued prior to May 9, 1992, all improvements identified in the approved Shoreland Permit must be completed by November 5, 1998 or the Permit shall lapse and become void on November 6, 1998." York, Me., Zoning Ordinance § 18.2.8 (Nov. 4, 1997).

is an abutter ... a reasonable allegation of a potential for particularized injury is all that is necessary to establish the real controversy required for adjudication in a court.").

■ [¶ 9] An abutting owner is "[a]n owner of land which abuts or adjoins. The term usually implies that the relative parts actually adjoin, but is sometimes loosely used without implying more than close proximity." BLACK'S LAW DICTIONARY 11 (6th ed.1990). We have applied the "close proximity" definition to an abutting landowner in similar cases. *See Brooks v. Cumberland Farms, Inc.*, 1997 ME 203, ¶ 8, 703 A.2d 844, 847 (stating that a landowner directly across the street, although not sharing a common boundary, is nevertheless an abutter for purposes of standing). Similarly, in *Harrington v. City of Biddeford*, 583 A.2d 695 (Me.1990), a landowner challenged the construction of a new home to be located on the owner's street. *Id.* at 696. The plaintiff's property and the proposed home site were separated by a third lot, and thus were not "abutting" properties. *See id.* Nevertheless, we concluded that "[g]iven the location of the [plaintiff's] house, a decision by the Board of Appeals that entitled [defendant] to build a house closer to the street than their house rose to the level of particularized injury sufficient to confer standing." *Id.*

■ [¶ 10] The Sahls and the Crafts own property across the street from the proposed motel expansion. They appeared at the ZBA hearing. They contend that the motel expansion would obstruct their view of the ocean, and that additional traffic would adversely affect them. These factors are sufficient to confer standing. *See Forester v. City of Westbrook*, 604 A.2d 31, 32 (Me.1992) (stating that "the proximate location of the abutter's property, together with a relatively minor adverse consequence if the requested variance were granted, such as the threatened obstruction of the abutter's view, sufficiently

demonstrates a potential for particularized injury").

## III. VESTED RIGHTS

■ [¶ 11] We directly review the decision of a municipal zoning board of appeals when the Superior Court acts as an intermediate appellate court pursuant to M.R. Civ. P. 80B. *See DeSomma v. Town of Casco*, 2000 ME 113, ¶ 7, 755 A.2d 485, 487. Our review of municipal decisions is limited to "error[s] of law, abuse of discretion or findings not supported by substantial evidence in the record." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 8, 750 A.2d 577, 581–82. Consequently, we examine the record developed before the ZBA to determine whether the standard has been met, and may not substitute our own judgment for that of the ZBA. *See Brooks*, 1997 ME 203, ¶ 12, 703 A.2d at 847–48.

■ [¶ 12] The Hugheses contend that they have vested rights to complete construction of the motel, and that application of the amended ordinance infringes on those rights. In order for a right to proceed with construction under the existing ordinance to vest, three requirements must be met:

> 1) there must be the actual physical commencement of some significant and visible construction; 2) the commencement must be undertaken in good faith ... with the intention to continue with the construction and to carry it through to completion; and 3) the commencement of construction must be pursuant to a validly issued building permit.

*Town of Sykesville v. West Shore Communications, Inc.*, 110 Md.App. 300, 677 A.2d 102, 104 (1996). *See also Town of Orangetown v. Magee*, 88 N.Y.2d 41, 643 N.Y.S.2d 21, 665 N.E.2d 1061, 1064 (1996) (stating that "a vested right can be acquired when, pursuant to a legally issued permit, the landowner demonstrates a commitment to the purpose for which the permit was granted by effecting substantial changes

and incurring substantial expenses to further the development").

[¶ 13] Maine law is in accord with this view. *See Thomas v. Zoning Bd. of Appeals of City of Bangor*, 381 A.2d 643, 647 (Me.1978) (stating that the rights of a building permit applicant may vest if the applicant makes a "substantial good faith change . . . in reliance on the zoning law in effect at the time of the application"). In addition, we recently recognized that the "circumstances when rights vest . . . occur when a municipality applies a new ordinance to an existing permit." *Peterson v. Town of Rangeley*, 1998 ME 192, ¶ 12 n. 3, 715 A.2d 930, 933. However, we have also limited the circumstances under which rights to proceed with construction may vest. Such rights may not vest, for instance, solely because a property owner: (1) filed an application for a building permit; (2) was issued a building permit; (3) relied on the language of the existing ordinance; or (4) incurred preliminary expenses in preparing and submitting the application for a permit. *See Thomas*, 381 A.2d at 647; *Waste Disposal Inc. v. Town of Porter*, 563 A.2d 779, 782 (Me.1989); *City of Portland v. Fisherman's Wharf Assocs. II*, 541 A.2d 160, 164 (Me.1988).

[¶ 14] In the present case, there was evidence before the ZBA that: (1) the Hugheses received a shoreland permit, with no expiration date, to allow construction activity at the motel; (2) the Town encouraged and approved phasing of the project in 1995 to minimize the impact of the construction; and (3) the Hugheses began the construction work and completed Phase I in 1995. In November 1997, the Town enacted the amended ordinance requiring that the entire phased project be completed within one year. The CEO testified that the Hugheses were unaware of the amended ordinance prior to its enactment. Thus, the evidence before the ZBA and all reasonable inferences drawn therefrom support a determination that: (1) the Hugheses had a valid permit; (2) they made substantial changes by completing Phase I and incurred substantial expenses in its completion; (3) the construction was undertaken in good faith as supported by the later phasing agreement; and (4) the Hugheses relied upon both the ordinances in existence at the time the 1991 permit was issued and the 1995 agreement to phase the project. Because there was sufficient evidence before the ZBA to support its conclusion that the Hugheses' right to complete construction of the motel had vested, the Superior Court erred in vacating the ZBA's decision.

The entry is:

Judgment vacated. Remanded to the Superior Court to affirm the decision of the Town of York Zoning Board of Appeals.