STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-062

GLENN and MARGUERITE PRENTICE,

Plaintiffs,

v.

DECISION AND ORDER

TOWN OF CAPE ELIZABETH,

Defendant.

JUN 4 2003

This matter is before the court on the appeal of the plaintiffs from a decision of the Cape Elizabeth Zoning Board of Appeals ("Board"), which affirmed the grant of a building permit by the Town's Code Enforcement Officer (CEO) to Party-in-Interest Paul Vose (Vose).

## BACKGROUND

The pertinent facts are largely undisputed. On June 23, 1987, Thomas and Carolyn Tinsman (Tinsman) acquired a parcel of land on Ocean Avenue in Cape Elizabeth, which included a residence that had been built in the 1940's (Original Lot). The Original Parcel contained 29,427 square feet and was comprised of four contiguous subdivision lots that had been in common ownership since 1945. Those lots were first designated on a recorded 1906 subdivision plan and again on a recorded 1927 subdivision plan. The Original Parcel is in a residential zoning district having a minimum lot size requirement of 80,000 square feet.

On November 10, 1995, the Town's zoning ordinance was amended (1995-Ordinance). Among other things, the amended ordinance defined a "lot" as

1

"[t]he whole of a contiguous parcel of land to which record fee simple title is in one owner, regardless of the dates or sources of acquisition of any part thereof, and regardless of any buildings and uses existing thereon, having definite boundaries by recorded deed."

R. at 71, 1995-Ordinance Ch. 19, art. I § 19-1-3. It also deterred the creation of new nonconforming lots by prohibiting land divisions that resulted in any lot that was smaller than the minimum lot size required for the zoning district in which the land was located. R. at 73, 1995-Ordinance Ch. 19, art. I § 19-3-2.[1] However, there were several exceptions to that prohibition. *Id.*

On November 20, 1996, the Tinsman's sold a portion of the Original Parcel to party-in-interest Paul Vose. The Vose parcel was originally shown as

_____

[1]The 1995-Ordinance regarding lot size requirements and exceptions reads in pertinent part:

Sec. 19-3-2 Lot Size Application & Exceptions.

(a)    Reduction of lot size. No lot shall be reduced in size by conveyance of a portion thereof unless the remaining land is not smaller that the minimum lot size provided for the zoning district in which that land is located, and unless the land conveyed is either not less than said minimum lot size or is conveyed to the owner of an abutting property, except (1) [by eminent domain], or (2) where the remaining land and the land conveyed do each meet the requirements of subsection (b) 2 and 3 below.

(b)(2)  Such lot was created on or before March 12, 1968 and at all times since March 12, 1968 has been owned physically apart from any other land of the same owner with which the lot could have been combined to permit compliance with the provision of 19-3-1, in which case such lot, and any building proposed to be erected on such lot shall be subject to [setbacks set forth later].

(b)(3)  Such lot was created on or before March 12, 1968 and consists of one or more contiguous areas, each separately bounded and numbered, or otherwise identified for conveyance, as plotted upon a lawfully recorded subdivision plan, which lot need not necessarily constitute the whole of a "lot" as defined by this Ordinance, in which case such lot, and any building proposed to be erected on such lot shall be subject to [setbacks set forth later].

R. at 73-74, 1995-Ordinance Ch. 19, art. I § 19-3-2(a), (b)(2) & (b)(3).

2

lot 20 on the above-referenced subdivision plan,[2] contains 10,421 square feet and is not built upon (Vose Lot).  Following the sale to Vose, the Tinsmans sold the remainder of the Original Parcel, containing 19,006 square feet, to someone who is not a party to this action.

Prior to the 1996 transfer to Vose, the Tinsmans obtained a waiver of the state minimum lot size requirement and met all setback and sewer requirements.  They were given verbal approval from the CEO regarding the buildability of the lot, and obtained a public access waiver from the Town's Planning Board.

In 1997, the Zoning Ordinance underwent "a complete overhaul" (1997-Ordinance).  However, the 1997-Ordinance did not include an exception that had been in the 1995-Ordinance which allowed construction on undersized lots with waivers.

In 1999, the plaintiffs purchased their home at 18 Ocean Avenue, which abuts the Vose Lot.  The Vose Lot is situated between the plaintiffs' property and the ocean.  Before purchasing their home, the plaintiffs were told by the CEO that Vose had been denied a building permit because his lot did not meet the minimum size requirements or any then-existing exceptions in the ordinance.

Effective July 4, 2001, the ordinance was again revised to include the previously omitted exception allowing construction on undersized lots with waivers (2001-Ordinance).  The revision also included a provision that

---

[2]*See* R. at 60-61.

permitted the development of contiguous nonconforming lots in the same ownership where "a developed nonconforming lot abuts an undeveloped nonconforming lot." R. at 87, 2001-Ordinance Ch. 19, art. I § 19-4-3(A)(2)(c). Thereafter, Vose applied for and was granted a building permit by the CEO. The decision of the CEO was affirmed by the Board based on its determination that the Vose Lot was a legally existing nonconforming lot. R. at 43-45.

The plaintiffs argue that the decision of the Board was an error of law for two reasons. First, the Vose Lot was an illegal lot, or, in the alternative, the Board's finding that the transfer to Vose did not violate the 1995-Ordinance is not supported by substantial evidence on the record. Second, any such illegality was not cured by the 2001 amendment to the 1997-Ordinance.

The Board counters that (1) the Vose Lot is a buildable lot and the issuance of the 2001 permit is valid; (2) the 1996 transfer to Vose was permitted under the 1995-Ordinance and resulted in two buildable nonconforming lots; and (3) the July 2001 amendment renders the plaintiffs' nonconforming argument moot. Vose submitted a separate brief, in which he agreed with and joined in the arguments made by the Board.[3]

DISCUSSION

The decision of the Board of Appeals is reviewed for errors of law, abuse of discretion, or findings of fact not supported by substantial evidence in the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168.

---

[3]In his appellate brief, Vose alleges additional facts and submits supporting attachments (i.e. the plaintiffs had notice of house to be built on Vose lot). However, the court declines to consider these facts because they were not part of the Board's proceedings and the court is limited to the record before that Board. M.R. Civ. P. 80B(f); *Sahl v. Town of York*, 2000 ME 180, ¶ 11, 760 A.2d 266, 269.

The court must review only the record established before the Board in order to determine whether the standards have been met. *Sahl v. Town of York*, 2000 ME 180, ¶ 11, 760 A.2d 266. This Court may not substitute its judgment for that of the Board. *Id.*

The Board determined that the Vose Lot "was a legal nonconforming lot at the time of [the 1996] transfer as well as today" based upon its interpretation of the 1995-Ordinance. The correctness of the Board's interpretation is a question of law and turns on the meaning of language in section 19-3-2(a) regarding a particular exception to the section's prohibition against any division of land that creates a nonconforming lot or lots, to wit:

> Sec. 19-3-2 Lot Size Application & Exceptions.
>
> (a) <u>Reduction of lot size</u>. No lot shall be reduced in size by conveyance of a portion thereof unless the remaining land is not smaller that the minimum lot size provided for the zoning district in which that land is located, and unless the land conveyed is either not less than said minimum lot size or is conveyed to the owner of an abutting property, except ... (2) where the remaining land and the land conveyed do each meet the requirements of subsection (b) 2 <u>and</u> 3 below.

R. at 73, 1995-Ordinance Ch. 19, art. I § 19-3-2(a) (emphasis added); *see Springborn v. Town of Falmouth*, 2001 ME 57, ¶ 8, 769 A.2d 852 (holding that interpretation of ordinance is a question of law); *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 8, 755 A.2d 485 (same).[4] The focus of this issue is whether the Board correctly interpreted the section's concluding reference to "(b) 2 <u>and</u> 3" to

---

[4]There is no dispute that had this entire sequence of events transpired after the 2001-Ordinance went into effect that the lot would be legal and a building permit could issue. It provides that "[i]f a developed nonconforming lot abuts an undeveloped nonconforming lot held in the same ownership, the two lots may be separated and owned independently." R. at 87, 2001-Ordinance Ch. 19, art. 19-4-3(A)(2)(c).

5

mean "(b) 2 or 3".

Before considering whether the disjunctive or the conjunctive interpretation is correct, it is important to recognize that the "land conveyed" and the "remaining land" each, separately and not collectively, must meet the requirements of section 19-3-2(a)(2). There is no dispute that the Vose Lot (the land conveyed) and the remainder of the Original Lot (the land retained) meet the criterion of subsection (b) 3 because each is comprised of "one or more" lots that were created before March 12, 1968, and plotted on a recorded subdivision plan. There is also no dispute that neither can meet the criterion of subsection (b) 2.[5] Thus, if compliance with (b) 2 and 3 was required under the 1995-Ordinance at the time of the 1996 conveyance to Vose, then both the Vose Lot and the remainder of the Original Lot are illegal nonconforming lots. Contrarily, if it was only necessary to comply with (b) 2 or 3, both are legal nonconforming lots because each meets the criterion of subsection (b) 3.

"The words 'and' and 'or' are convertible as the sense of a statute may require." 1 M.R.S.A. § 71(2) (1989); *Griffin v. Town of Dedham*, 2002 ME 105, ¶ 7, 799 A.2d 1239 (applying rule of *statutory* construction to interpretation of ordinance); *Stewart v. Inhabitants of Town of Durham*, 451 A.2d 308, 310 (Me. 1982) (same). The terms of an ordinance are to be construed reasonably with

---

[5]Although each is comprised of "one or more" subdivision lots that were created before March 12, 1968, they have not "been owned physically apart from any other land of the same owner" since that date. They had been in common ownership from 1945 until the Tinsmans' conveyance to Vose in 1996. Of course, even when combined, the Vose lot and the remainder of the Original Lot, together, contained only 29,427 square feet, well below the 80,000 square feet minimum lot size in that district. Thus, they "could [not] have been combined to permit compliance with the provision of 19-3-1," as required by subsection (b)(2).

6

regard for the objectives and the structure the ordinance as a whole, *Springborn v. Town of Falmouth*, 2001 ME 57, ¶ 8, 769 A.2d 852.

In this regard, the court is mindful that zoning provisions that permit the continuation of a nonconformity should be strictly construed. *Rockland Plaza Realty Corp. v. City of Rockland*, 2001 ME 81, ¶ 18, 772 A.2d 256. However, this rule of construction does not override the court's need to discern the intent of the legislative bodies that enacted the zoning ordinances. *Id.* The Law Court has also acknowledged that considerable weight is to be given an administrative agency's interpretation of an ordinance that it administers. *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013. It should only be overruled if the ordinance "plainly compels a contrary result". *Id.* In the instant case, the Board's interpretation is reasonable and a different result is not plainly compelled.

Section 19-3-2(a) prohibits the conveyance of part of a parcel of land that results in either the land conveyed or the land retained, or both, being less than the minimum lot size for the zoning district in which they are located. Subsection (a)(2) was clearly intended to provide an exception to that prohibition. However, there can never be an allowable "exception" under that subsection if it requires compliance with (b) 2 <u>and</u> 3. When separately examining any land thus conveyed and retained, as required by subsection (a)(2), there is no circumstance in which it can ever be said that at all times between March 12, 1968, and the date of the part-conveyance either the land conveyed or the land retained was "owned physically apart from any other land of the same owner", as required by subsection (b) 2. Quite simply, they had to

7

have been owned "physically together" prior to the conveyance creating them. Thus, each parcel prevents the other from being "owned physically apart from any other land of the same owner" and, thus, each prevents the other from meeting the requirements of (b) 2.

It is interesting to note that section 19-3-2(b), which includes (b) 2 and 3, enumerates in the *disjunctive* separate circumstances under which buildings may be erected on nonconforming lots that were either created on or before March 12, 1968, or were created after that date and were conforming at the time of their creation and thereafter became nonconforming under the ordinance. There are many circumstances in which it is possible for such nonconforming lots, called "nonconforming lots of record" in the ordinance, to comply with subsection (b) 2. However, it is not possible for reduced-sized lots described in section 19-3-2(a) to satisfy the requirements of subsection (b) 2.

It does not make sense that the Town's legislative body intended to enact a provision that is a nullity. *Opinion of the Justices*, 460 A.2d 1341, 1346 (Me. 1982) ("[s]tatutory language should not be read so as to render it useless, if a reasonable alternative construction is possible"); *State v. Crocker*, 435 A.2d 58, 63 (Me. 1981) ("the central purpose of statutory construction is 'to save, not to destroy'"). To the contrary, it does make sense that the purpose of section 19-3-2(a) was to provide a limited and viable exception to the general prohibition against creating new nonconforming lots after March 12, 1968. Thus, applying a conjunctive construction to section 19-3-2(a)(2) is contrary to common sense and to the intent and purpose of this section of the ordinance. *Thibeault v. Larson*, 666 A.2d 112, 114 (Me. 1995) (when interpreting statute, court

8

examines plain meaning of statutory language to give effect to legislative intent, and construes statutory language to avoid absurd or illogical results).

In the present case, the Vose Lot was plotted on a recorded subdivision plan and otherwise satisfies the requirements of subsection (b)(3). Accordingly, the Board correctly determined that the Vose Lot was and is a buildable nonconforming lot according to the 1995-Ordinance.

It also is clear from the record that the 1997 omission was an oversight and was properly remedied in the 2001-Ordinance. Therefore, the issuance of a building permit to Vose in 2001 was legal and the Board's affirmation of the CEO's decision was correct and based on sufficient findings regarding the setbacks and the nonconforming nature of the lot. R. at 45, 58.

Finally, the court does not need to reach the plaintiffs' argument that the 2001 revision to the ordinance did not cure the defect in the 1996 transfer to Vose because the court affirms the Board's determination that the transfer resulted in a legal nonconforming lot. Likewise, the Board's contention that the plaintiff's argument is mooted by the 2001 revision need not be addressed.

## DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is

Decision of Cape Elizabeth Zoning Board of Appeals denying Plaintiffs' administrative appeal and upholding Code Enforcement Officer's decision to issue building permit to Party-in-Interest Paul Vose is AFFIRMED.

Dated: May 15, 2003

_____
Justice, Superior Court

9

Date Filed 10-25-01       Cumberland      Docket No. _____ AP-01-062 _____

County

Action ___ RULE 80B APPEAL _____

GLENN and MARGUERITE PRENTICE      TOWN OF CAPE ELIZABETH
         PAUL VOSE

vs.

| Plaintiff's Attorney | Defendant's Attorney (Town of Cape Elizabeth) |
|---|---|
| JAMES B. HADDOW, ESQ.<br>50 Monument Square, P.O. Box 9733<br>Portland, ME 04104-5033<br>(207) 775-0200 | Michael H. Hill, Esq.<br>P.O. Box 7046<br>Portland, Maine 04112-7046<br><br>Paul Vose (Party in Interest)<br>21 Linwood Street<br>Cape Elizabeth, Maine 04107<br>207-799-2731 |

| Date of Entry | |
|---|---|
| 2001<br>Oct. 26 | Received 10-25-01:<br>Summary Sheet filed. |
| "    " | Complaint (Pursuant to M.R.Civ.P. 80B) filed. |
| Oct. 29 | On 10-29-01.<br>Briefing schedule mailed. Petitioner's brief and record due 12-4-01. |
| Oct. 31 | Received 10-31-01.<br>Defendant, Town of Cape Elizabeth's, Answer filed. |
| Nov. 1 | Received 10-31-01:<br>Acknowledgment of Receipt of Summons and Complaint filed. Showing Notice and Acknowledgment of Service on October 29, 2001 upon Defendant, Town of Cape Elizabeth to Michael Hill, Esq. |
| Nov. 5 | Received 11/05/01:<br>Summons filed showing officer's return of service on 10/30/01 upon Paul Vose. |
| Nov. 6 | Received 11-06-01.<br>Party In Interest, Paul Vose, Answer filed. |
| Dec. 04 | Received 12/04/01:<br>Party-in-interest, Paul Vose's Motion for Stay filed. |
| Dec. 5 | Received 12-4-01.<br>Plaintiff's 80B Brief filed. |
| "    " | Appendix to 80B Brief filed. |
| Dec. 5 | Received 12/05/01:<br>Party-in-interest, Paul Vose's Motion for Stay filed (duplicate) |
| "    " | Letter from Michael Hill, Esq. advising he has no objection to Mr. Vose's Motion for Stay filed. |