STATE OF MAINE

SAGADAHOC, ss.

VIRGINIA KING, *et al.*,

      Plaintiffs

    v.

THE INHABITANTS OF THE
TOWN OF PHIPPSBURG, *et al.*,

      Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-006
JRA  SAG- 5/15/2003

DECISION AND ORDER

MAY 1 6 2003

DONALD L. GARBRECHT
LAW LIBRARY

'JUN 2 2003

## I.    Introduction.

This matter is before the court on the plaintiffs' M.R. Civ. P. 80B complaint and related motions. By their complaint, the plaintiffs seek to reverse the decision of the Phippsburg Board of Appeals (BA) which had overturned a Planning Board (PB) denial of a request by defendants Edward and Elizabeth Johnson (Johnsons) to divide their lot so that two residences could be built there on two proposed lots.

Two motions accompany the case: the plaintiffs' motion to extend the time within which the appeal may be filed, and a motion to dismiss filed by the Johnsons and codefendants, Leslie A. Wyatt (Wyatt) and Stephanie L. Srour (Srour). The latter two individuals are apparently the Johnsons' daughters.

The parties have agreed that the merits of the appeal and the motions may be consolidated for disposition.

## II.    Facts.

There is no disagreement as to the facts which are germane to this dispute. They may be repeated here in an abbreviated fashion as follows:

On January 15, 1994, the Johnsons purchased eight contiguous lots of 7,500 square feet each which are part of a plan developed in 1922 and called Popham Beach Estates. The eight lots, known by the parties as "the subject property" contain 60,000 square feet. It is also designated as lot 52.01 on the town's tax map and referenced in town records as one lot. The Johnsons sold four of these lots to Wyatt and four to Srour in January, 2002. The Wyatt property and the Srour property each contain 30,000 square feet.

Before buying the lots, Edward Johnson in late 1993 obtained a building permit from Phippsburg (the town) where Popham Beach Estates is located. At the time the building permit was issued, Phippsburg's Land Use Ordinance (LUO) required a minimum lot size of 30,000 square feet for the construction of a dwelling or cottage.

In 1994 the Johnsons commenced building by the installation of cement posts and a horizontal board placed above them. At that time the LUO provided that if building operations were commenced but no additional work was done for two years, the building permit became void. No work was done in the two years following the installation of the posts and the placement of the board.

At the May, 1999 town meeting, the LUO was amended to increase the minimum lot size from 30,000 square feet to 40,000 square feet.

In December of 1999, Edward Johnson again applied for a building permit. It was issued on December 27, 1999, to expire on December 27, 2000.[1] On the permit, the Code Enforcement Officer (CEO) noted, "20' setbacks, 40,000' lot size." R. at 2. As of September, 2000, no building had been undertaken except for the cement posts and plank which had been installed in 1994.

---

[1] The same ordinance provision, section 2.2 of the LUO, which voids a building permit if there has been no construction activity for two years once it has begun, also voids a permit "unless operations are commenced within one year."

According to the complaint, the Johnsons applied to the PB on September 13, 2000, to split lot 52.01 into two parcels of 30,000 square feet each. The PB denied the application that day because the lots would not meet the 40,000 square foot requirement enacted by the town in 1999.[2]

On July 26, 2001, the Johnsons applied to the BA for a variance to "allow 8 contiguous 7500 sq. ft. lots be granted status of grandfathered for 2 30,000 sq. ft. buildable lots." R. at 11. According to the form used to apply for the variance, two individuals were notified of the public hearing to be held that same day, namely Clark Hill and Joyce Kondak. *Id.* According to the record, the BA on the same day voted unanimously "that denial of request of planning board for legal status for 2 lots on Sept. 13, 2000, is overturned." R. at 11, 12. Accordingly, a variance was approved that day by the BA allowing four contiguous 7,500 square foot lots to be combined to allow two 30,000 square foot lots, both of which would be buildable. R. at 13.

The town's Board of Appeals Ordinance (BAO) provides at section VIIB:

> The Board shall cause notice of the date, time and place of such hearing, the location of the building or lot, and the general nature of the question involved, to be given to the person making the application and to be published in a newspaper of general circulation in the municipality. The date of the publication shall be at least seven days prior to the hearing. The Board shall also cause notice of the hearing to be given to the Board of Selectpersons, other concerned boards, commissions, persons and the owners of property abutting that for which the appeal is taken at least twenty days prior to the date of the hearing.

The LUO provides at section 4.8:

Section 4.8 Appeal Procedures

> No decisions shall be made by the Board of Appeals until the applicant, the Planning Board and Code Enforcement Officer have had a full opportunity to discuss the facts and the laws involved.

---

[2] The record provided references a division of 68,000 square feet rather than 60,000 perhaps because the Johnsons had an additional 8,000 square feet via another contiguous lot. This difference in square footage is unimportant to the resolution of this case.

The Board of Appeals shall meet at the call of the chairman or when a meeting is requested by the Board of Selectmen. Within 10 days of receiving an appeal, the Board of Appeals shall hold a public meeting after notifying abutting property owners, the Codes Enforcement Officer, the Planning Board and the Board of Selectmen.

No notice of the Johnsons' application was provided to other persons or published in a local newspaper.

Section VIII, H of the BAO provides:

H.     Unless otherwise specified, any order or decision of the Board for a permitted use shall expire if a building permit for the use is not obtained by the applicant within ninety (90) days from the date of the decision, however, the Board may extend this time an additional ninety (90) days.

No building permit was obtained by the Johnsons within 90 days of the BA decision of July 26, 2001.

The subject property is abutted on the west by two lots owned in part by plaintiff Virginia King. The Johnsons, as owners of the subject property, have easement rights over King's property to reach the subject property. King also owns land nearby on Silver Lake.

Plaintiff Philip Jermain is a part owner of the two lots owned by King which abut the subject property.

Plaintiffs Dorothy, Peter and Adelle Rubin own lots near the subject property and share the same access road.

In mid-October, 2001, Jermain learned of the BA decision of July 26, 2001, from the town's CEO. He says that within 30 days of that, on November 13, 2001, he had his lawyer send a letter to the BA objecting to the granting of the variance without proper notice of the application and hearing. In response, the BA on April 16, 2002, issued a notice of hearing for the July 26, 2001 application which was received by Jermain on or about April 17, 2002.

4

On April 24, 2002, Virginia King first learned that the town had granted a variance for the subject property. The Rubins first learned of the issuance of the variance soon after April 24, 2002, from King's niece, attorney Suzanne King Nusbaum.

On May 9, 2002, the BA held a meeting pursuant to its notice of April 16, 2002. At this event the BA decided to hold no hearing as it believed it had no authority to reconsider its decision of July 26, 2001, as too much time had elapsed.

On May 22, 2002, the Rule 80B complaint was filed with this court which was followed by the Amended Complaint on June 7, 2002.

## III. Motion to Extend Time.

By this motion the plaintiffs seek authorization to file this action beyond the time period prescribed by statute for this purpose.[3] Thus, 30-A M.R.S.A. § 2691(3)(G) provides that any party to a case before a municipal board of appeals may appeal its decision to the Superior Court "within 45 days of the date of the vote on the original decision." The same section provides, however, that the cited time period for filing an appeal "may be extended by the court upon motion for good cause shown." *Id.*

The plaintiffs argue that the court may find good cause for their late appeal of the BA's July 26, 2001 decision in the circumstance that they did not know about the decision because the BA failed to provide notice of the hearing on the Johnsons' variance application as the town's ordinances require. However, once they learned of the board's action they say they acted promptly to request a rehearing and then filed a timely appeal of the BA's decision not to reconsider its July 26, 2001 decision.

The town replies to this argument by asserting that the Rubins are not abutters and therefore were not entitled to notice and that notice to King and Jermain was

---

[3] The individual defendants, the Johnsons, Wyatt and Srour, filed no objection to this motion. Accordingly, it must be granted as to them. M.R. Civ. P. 7(c)(3).

5

satisfactory as it was mailed to the same address where their tax bill is sent. Finally, the town acknowledges it did not provide the newspaper notice as its ordinances require.

A variety of arguments defeat these objections. First, it is acknowledged that the address for tax purposes of King and Jermain is the address of the applicant for the variance, Richard S. Hill, who was acting in behalf of the Johnsons. Apparently, he never advised these plaintiffs of the application which, in effect, he had sent to himself. Such notice, therefore, turns out to be no notice at all as to these plaintiffs.

Next, while the town argues that these two plaintiffs would have had notice in this fashion, it overlooks the fact that the responsibility for providing notice was not Mr. Hill's but the town's. It, as noted, never gave notice to anyone of the Johnsons' application for a variance as its ordinances dictate.

In this regard, the town's argument that the Rubins were not entitled to notice because they were not abutters is a hollow one. The Rubins were never given the opportunity to establish their interest in the Johnsons' activities. Importantly, the notice provisions in the ordinances are not limited to abutters. Thus, section VII B of the BAO provides that notice "shall be given to other . . . concerned persons *and* the owners of property abutting . . ." (emphasis supplied). While the town may be excused from attempting to determine who all the concerned persons may be, they cannot be excused from its self-imposed requirement that it advertise the notice of the application before the BA at least seven days before its hearing. Obviously, this is the secondary means by which concerned persons would learn of a zoning variance application in Phippsburg which must be undertaken.

Because the BA followed none of the notice requirements in their ordinances, and conducted a hearing on the Johnsons' application the same day it was presented, it can only be concluded that the plaintiffs must be excused from the time limit to perfect

6

an appeal as prescribed by statute. 30-A M.R.S.A. § 2691(3)(G). Indeed, were the court to find otherwise, it would, in essence, be endorsing the town's failure to follow its own processes to the prejudice of those they were intended to benefit. Accordingly, the court finds that this case contains the "special circumstances" which serve to except a grievant from the strictures of an appeal period when contesting the action of a zoning board. *See Boisvert v. King*, 618 A.2d 211, 213 (Me. 1992).

In sum, the court concludes that the plaintiffs must be permitted the opportunity to appeal the BA's actions of either July 26, 2001 or May 9, 2002. As to the former event, they had no notice of its occurrence and moved expeditiously to preserve their objections to the BA's granting of a variance to the Johnsons when they learned of its action. As to the latter action by the board, the appeal was filed within the time period prescribed by the cited statute for an appeal from a board of appeal's decision if the action of May 9, 2002, is to be considered either a decision or a reconsideration. *See* 30-A M.R.S.A. 2691(3)(F) and (G).

For these reasons, the plaintiffs' motion to extend time is to be granted.

## IV.     Motion to Dismiss.

The individual defendants have filed this motion seeking to dismiss the complaint on two grounds, namely that the plaintiffs lack standing and that their appeal was not timely filed. Because the court has already addressed the merits of the second contention herein, and because these parties failed to object to the plaintiffs' motion to extend time so that their objection to this request was waived, the court will decline to address this argument.

To establish standing so that a party may challenge the decision of a board of appeals, he must "(1) have appeared before the board of appeals; and (2) be able to

7

demonstrate a particularized injury as a result of the board's action." *Sahl v. Town of York*, 2000 ME 180, ¶ 8, 760 A.2d 266, 268 (citations omitted).

With reference to the first requirement, for the reasons described herein, the plaintiffs were denied the opportunity to appear before the BA because it failed to follow the town's ordinances which would give notice to "concerned persons," abutters, the public and other named individuals. BAO, section VII B; R. at G. Accordingly, as found herein, they must be excused from this attendance requirement and from the effect of the statute requiring an appeal within 45 days of the BA's action. *See* 30-A M.R.S.A. § 2691(3)(G).

As to the required showing of a particularized injury, the Law Court has held that an abutter is not required to demonstrate "a high degree of proof of a particularized injury." *Forester v. City of Westbrook*, 604 A.2d 31, 32 (Me. 1992)(citations omitted). Indeed, if an appealing party is an abutter, "the threshold requirements to establish standing are minimal." *Sahl v. Town of York*, 2000 ME 18, ¶ 8.

"An abutting landowner is '[a]n owner of land which abuts or adjoins. The term usually implies that the relative parts actually adjoin, but is sometimes loosely used without implying more than close proximity.'" *Id.* at ¶ 9, 760 A.2d at 269 (*quoting* Black's Law Dictionary II (6th ed. 1990)). In this regard, the Law Court has accepted the more loosely applied use of the term and allowed owners of property in "close proximity" to the subject property to be considered as abutters. *See Id.* and examples cited therein. Thus, under Maine law, to establish standing via a showing of a particularized injury, one need not show that his property in fact adjoins or borders the property which is the subject of a dispute.

The individual defendants, nevertheless, argue that the plaintiffs are not abutters. On this point, because this is a motion to dismiss, the court must "consider

8

the material allegations of the complaint as admitted and review the complaint in the light most favorable to the plaintiffs to determine whether it . . . alleges facts that would entitle the plaintiffs to relief pursuant to some legal theory." *Bussell v. City of Portland*, 1999 ME 103, ¶ 1, 731 A.2d 862 (citations omitted). Thus, in the amended complaint, plaintiffs King and Jermain claim to own property which, in fact, abuts "the subject property." The Rubins say they own lots "nearby the subject property" and share an access road with the defendants. *See* Amended Complaint ¶¶ 3-7.

Because King and Jermain must be considered abutters for purposes of this motion, they are only required to reasonably allege a potential for particularized injury. While they have not done so in the amended complaint, they cite various injuries to their abutting properties in their later filings.[4] While these may be disputed by the defendants, these arguments may not be resolved via this motion against these plaintiffs.

According to the record, the Rubins own property two lots away from the defendants and on the same road. R. at A. While this circumstance does not, by itself, confer standing, it is not markedly different from other cases in which the Law Court has found standing. *See, e.g., Harrington v. City of Biddeford*, 583 A.2d 695, 696 (Me. 1990) (standing where owner on same street with one lot separating subject property); *Singal v. City of Bangor and Nite Owl, Inc.*, 440 A.2d 1048, 1050-51 (Me. 1982) (standing where owner has residential lot within 100 feet of subject commercial property). Thus, as with the other plaintiffs, the court cannot conclude on this record that the Rubins are not

---

[4] The scheduling order may be read as directing the parties to assert facts concerning standing in their submissions in support of and in opposition to a motion to dismiss. *See* Order of September 16, 2002.

abutters and therefore lack standing,[5] or that King lacks standing via other lots which do not directly abut the defendants' property, but are two lots away. *See* R. at A; Amended Complaint ¶ 4.

From this, the court cannot conclude on this record, as a matter of law, that the plaintiffs do not have the potential of a particularized injury by the division of the defendants' lot and residential construction there. Accordingly, this motion is to be denied.

## V. The Merits of the Appeal.

The plaintiffs have provided extensive briefing on the issues they have identified for resolution by the court. In response, the town and the individual defendants have taken a more limited approach. Accordingly, the court will devote less attention to the issues which appear to be uncontested and address in greater detail those which the defendants have briefed.

In this regard, it appears that the plaintiffs' contention that the BA meeting of July 26, 2001, is void is not contested. Indeed, it cannot be argued that the BA's decision of that date has any validity because the board utterly failed to comply with its own procedures which are designed to give municipal officials, abutters, "concerned persons," and the public the opportunity to attend and be heard as to questions concerning applications before the BA. BAO, section VII B. Moreover, because the court has already concluded that the plaintiffs are to be excused from the statutory time limit to appeal the BA decision of July 26, 2001, to this court, it is unnecessary to further address that argument or the plaintiffs' due process claims.

---

[5] At oral argument counsel for the individual defendants conceded that on the record before the court that it is difficult to determine who is affected by development of their property. It was also conceded that the view from the Rubins' cottage might be affected by the development of the subject property.

The plaintiffs also argue that the BA lacked the authority to overturn the planning board, determine that the Johnson lot was divisible into two 30,000 square foot buildable lots, and grant a variance for this purpose. In this regard, they correctly point out that without proper notice, the board's activities on July 26, 2001, are of no legal effect. Second, the application of July 26, 2001, was for a variance but was treated by the board as an appeal from the PB. This, too, was improper as the time limit for appealing a decision from the PB to the BA had long since expired. LUO, section 4.7; R., Exh. 40, p. 19. Finally, the record submitted demonstrates that the BA erred in its conclusion that the issuance of a building permit in 1993 for a 30,000 square foot lot grandfathered the Stimson/Johnson property as two 30,000 foot building lots.

The court concludes that this was error because the LUO defines a "lot" as a "parcel of land in single ownership, described on a deed, plot, or similar legal document." LUO, section 5.2; R., Exh. 40, p. 23. It also requires that no division of such a parcel in single ownership which is made up of smaller contiguous lots can be made "which creates any dimension or area below the requirements of this ordinance." *Id.* section 2.10(2). R., Exh. 40, p. 10. Thus, the Johnson property of 60,000 square feet which is made up of eight smaller contiguous lots, because it was in single ownership, could not be subdivided into lots that are less than the requirements of the ordinance, namely 40,000 square feet. LUO, section 2.5, amended May 17, 1999. R., Exh. 40. The fact that the Johnsons obtained a building permit in 1993 when one could build on a 30,000 square foot parcel does not "grandfather" their property as two 30,000 square foot lots. The building permit itself does not authorize subdividing the Johnson property, R. at 1, and the permit became void because of inaction two years later so that any effect it may have had as a means to divide the property was lost in 1995. Indeed, the Johnsons must have recognized the need to formally apply to subdivide because

11

they did so unsuccessfully in September of 2000 after the minimum lot size had been increased to 40,000 square feet.

While it is true that the BA could authorize the division of such a conforming lot, it would have to do so by granting a variance upon a proper application for this purpose. It must be observed, however, that the application and the BA decision make no reference to the bases authorized by the town's ordinances to grant a variance. Thus, the BA may grant a variance when the strict application of the town's ordinances would cause undue hardship to the property owner who has applied for such relief. So, even though the plaintiffs believe that the BA considered the individual defendants' claim that the failure to divide their property would create a financial hardship, there is no record that the BA ever did so.

The plaintiffs also argue, without contradiction from the defendants, that BAO section VIII H requires an applicant to obtain a building permit within 90 days from the date the BA decides to authorize a use. R., Exh. 41. Because the Johnsons never obtained the building permit, if the BA action of July 26, 2001, is to be considered a variance to permit building on the two new lots, that variance has expired.

In sum, from all this the court must conclude that the plaintiffs' appeal must be sustained and the action of the BA reversed and vacated as its actions are then, and now, without legal effect.

## VI.    Conclusion.

For the reasons recited in this Decision and Order, the BA decision of July 26, 2001, must be vacated as without legal validity and the variance then issued declared void. Additionally, because the BA declined to take action on May 9, 2002, to cure the errors surrounding its July 26, 2001 reversal of the PB and the granting of a variance, the decision that day not to reconsider must also be reversed and vacated.

12

Anticipating this result, the individual defendants have requested a remand. A remand, however, would simply restart the process at the BA with the Johnsons' application for a variance which, apparently, was not accompanied by the material required for such an application. Moreover, it also appears that the Johnsons no longer own lot 52.01 and that their two daughters do. Thus, any application to divide this property must be prosecuted by them.

Instead, as suggested by the Rubins in their brief, it is more appropriate for Ms. Wyatt and Ms. Srour, if they wish, to begin anew any effort to divide the Johnson property into two building lots as the Phippsburg ordinances may permit. This, of course, would not entail a remand to the BA on the Johnsons' application. Accordingly, there will be no remand and Ms. Wyatt and Ms. Srour can pursue this matter as they see fit. In making this observation, the court offers no opinion as to the merits of any reapplication to subdivide or build on lot 52.01.

Finally, the court will decline to authorize the injunctive and declaratory relief prayed for in the Amended Complaint beyond what is here articulated as it is unnecessary to do so. By granting this appeal and finding the BA's actions of July 26, 2001, and May 9, 2002, void and of no legal effect, the court is invalidating the variance the BA purported to issue on the former date. Moreover, there appears to be no current building permit to invalidate. This being so, there are no activities by the defendants to enjoin. Similarly, there are no further declarations to be made other than the findings the court has here made as to the validity of the BA's actions.

Based on the foregoing, the clerk is directed to make the following entries:

I.      Motion to Extend Time is GRANTED.
II.     Motion to Dismiss is DENIED.
III.    Judgment is to be ENTERED on the plaintiffs' Amended Complaint. Accordingly, the court REVERSES and VACATES the

13

decisions of the Town of Phippsburg Board of Appeals of July 26, 2001, and May 9, 2002, as the actions then taken are void and of no legal effect.

Dated: May___15___, 2003

John R. Atwood
Justice, Superior Court