STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO-AP-2021-20

HANS UTSCH and
JULIA HAZZARD MERCK,
    Petitioners

### DECISION AND ORDER

V.

MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
    Respondent

and

HAROLD MacQUINN, INC.,
    Party-in-Interest

### INTRODUCTION

The matter before the court is in an unusual procedural posture. It purports to be an appeal pursuant to M. R. Civ. P. 80C and 5 M.R.S. §§ 11001-11007 (Maine Administrative Procedure Act) (MAPA) from an email by the Mining Coordinator of the Bureau of Land Resources within the Department of Environmental Protection. That email was the latest in an almost decade-long debate/dispute concerning whether Hall Quarry on Mount Desert is required to file a Notice of Intent to Comply (NOITC) in accordance with 38 M.R.S. § 490-Y. *See* Administrative Record, "A.R." at 319 (Tab 86).

The email, authored by Mining Coordinator Michael S. Clark, concluded: "At this time, the Department maintains that a NOITC is not required for the activity proposed by Harold MacQuinn, Inc. (MacQuinn) [the owner/operator of Hall Quarry]." Mr. Clark's email was made in response to

a letter dated March 29, 2021 from Petitioners' counsel asking "that the DEP require that Harold MacQuinn, Inc (MacQuinn) must submit to DEP a Notice of Intent to Comply (NOITC) pursuant to 38 M.R.S. § 490-Y before proceeding with MacQuinn's plan to restart operation of Hall Quarry in Mount Desert." AR at 295 (Tab 83).

This case raises interesting issues of standing, final agency action, timeliness, and statutory interpretation. The court does not intend to address these issues in anything close to an exhaustive way. The court's current caseload and the lack of any administrative support makes that impossible. Rather, the court will address these issues in a more summary fashion. But first a summary of the factual background may be helpful.

## FACTUAL BACKGROUND

Hall Quarry is not operating now and has not operated for several years. It is the court's understanding that a local moratorium is in place that currently prevents the resumption of quarry operations. The court further understands, however, that Hall Quarry was operational in 1967 and thereafter ceased operations for a period of years. In 2012, representatives of MacQuinn expressed an interest in restarting operations at the quarry and inquired as to whether excavations there that occurred prior to January 1, 1970 were "grandfathered" under DEP rules and its interpretation of the law.

In June 2012, Mark Stebbins, the Mining Coordinator at the time, wrote to Paul MacQuinn: "If quarrying activity remains in the original footprint of the old quarry, no permit is required under the Performance Standards for Excavations." AR at 14 (Tab 6). The issue of whether MacQuinn was required to file a NOITC for Hall Quarry was revisited several times by the Office of Mining Coordinator from 2012-2015, and that office took the consistent position that the area excavated prior to January 1, 1970 was not

2

counted, or was "grandfathered," in determining whether the total area exceeded one (1) acre, which would trigger the requirement for the filing of a NOITC.

The court's understanding is that the Department's position on grandfathering was based on the fact that the regulation of quarries had been part of the Site Location of Development Law enacted in 1969, which provided that the law did not apply "to any development in existence or in possession of applicable state or local licenses to operate or under construction on January 1, 1970." 38 M.R.S. § 488; P.L. 1969, ch. 571, § 2. This interpretation continued even after the regulation of quarries, and performance standards for them, was re-codified elsewhere in Title 38 in 1995. As enacted in 1995, the requirement of filing a NOITC for quarry excavations was governed by the Performance Standards for Quarries (Article 8-A), which generally provided that

> . . . a person intending to create or operate a quarry under this article must file a notice of intent to comply before the total area of excavation of rock or overburden on the parcel exceeds one acre.

38 M.R.S. § 490-Y.

In contrast to the language of section 490-Y, the performance standards for excavations for "borrow, topsoil, clay and silt," is governed by Article 7 and contains its own NOITC requirement found in 38 M.R.S. § 490-C, which provides in relevant part, that

> . . . a person intending to create or operate an excavation under this article must file a notice of intent to comply before the total area of excavation on the parcel equals 5 or more acres excavated since January 1, 1970.

38 M.R.S. § 490-C, *as amended by,* P.L. 1995, ch. 700, § 23.

3

The language underlined above, i.e. "excavated since January 1, 1970," was not part of 38 M.R.S. § 490-Y as it was enacted by P.L. 1995, ch. 700, § 35.

As late as February 2015, the position of the Office of Mining Coordinator continued to be that Hall Quarry was "grandfathered" as to the area excavated prior to January 1, 1970. *See* AR at 65-66 (Tab 29). In March 2015, however, the Department changed its position after consulting with the Attorney General's Office and realizing that the "grandfathering" provision from the Site Location of Development Law had not been transferred or carried forward to the Performance Standards for Quarries in section 490-Y. As a result, the Department's position was that Hall Quarry was required to file a NOITC if the total area of excavation exceeded 1 acre, regardless of when the excavation occurred. AR at 73 (Tab 33).

In response to that change of position from the Department's Mining Coordinator, MacQuinn modified it quarry plan so that the area excavated would not exceed 1 acre. "Our intention is to not trigger the requirement that we file a notice of intent to comply." AR at 75 (Tab 34). In an email dated June 22, 2015, Mining Coordinator Stebbins confirmed that "[b]ased on the proposed size of the quarry, which is 1-acre, a NOITC under the Performance Standards for Quarries is not required for this project. The law only applies to a quarry that is more than 1-acre in size (*see* 38 M.R.S.A. § 490-X)." AR at 102 (Tab 38).

Notwithstanding MacQuinn's stated attempt to modify the size of its project at Hall Quarry so as to avoid triggering the need to file a NOITC, residents of the area continued to inquire of the Mining Coordinator's Office whether the quarry was in compliance with state law and whether the operation had expanded in size and needed to file a NOITC. *See* AR Tabs 39-

4

58. The Department, through the Mining Coordinator, typically responded to these inquiries by explaining that since the area of the quarry was not greater than 1 acre, the requirement to file a NOITC was not applicable. AR at 178 (Tab 58).

In 2017, the Department proposed legislation that became L.D. 1473 before the First Regular Session of the 128th Maine Legislature. The bill was entitled "An Act To Make Minor Changes and Corrections to Statutes Administered by the Department of Environmental Protection." Section A-11 of the bill added the following language at the end of the first sentence of 38 M.R.S. § 490-Y: "excavated since January 1, 1970." The "summary" at the end of the bill does not mention this particular language or what it was intended to do. Then Deputy Commissioner Melanie Loyzim did testify before the Joint Standing Committee on Environment and Natural Resources and stated:

> In Section A-11, the addition of the date to 38 M.R.S.A.§ 490-Y aligns it with the original effective date of the law in 1970. Per the guidance of the Attorney General's Office, land excavated prior to 1970 was not affected by the Notice to Comply provisions. This does not affect any lands currently subject to regulation under the quarry standards, it just clarifies the language to match the interpretation that has been applied.

The bill was passed and enacted without the Governor's signature on June 16, 2017 as P.L. 2017, ch. 137, § A-11.

Following the enactment of this statute, the controversy surrounding Hall Quarry continued well into 2019 at both the local level and at the Office of Mining Coordinator, at which time Michael Clark had become the Coordinator. In a series of emails to concerned citizens who inquired about

5

the quarry or alleged that the quarry was expanding its operations, the DEP determined that Hall Quarry was not required to file a NOITC.

In 2020, an attorney representing local residents wrote to Mark Stebbins, (who at this time had become Director of the Land Division within the Bureau of Land Resources) and asserted that Hall Quarry had an extraction area of over 2 acres, which should have triggered the requirement to file a NOITC. This letter became known as the "Katz" inquiry. Mr. Stebbins replied in a September 8, 2020 email that the Department's position remained unchanged. The Department calculated the excavation area at Hall Quarry at 1.024 acres, above the 1-acre threshold. From that total acreage, however, the Department deducted 0.88 acres because that extraction occurred prior to January 1, 1970. The resulting 0.144 acre did not trigger the 1-acre jurisdictional limit.

In a letter dated March 29, 2021, counsel for the Petitioners here wrote to Mining Coordinator Michael Clark asking that the DEP require MacQuinn to submit a NOITC "before proceeding with MacQuinn's plan to restart operations of Hall Quarry." AR at 295 (Tab 83). This correspondence has been referred to as the "Monahan Letter." Attorney Manahan explicitly raised the issue that section 490-Y "does not include any provision for 'grandfathering' of pre-1970 excavated areas that are again excavated after 1970." *Id.*

Mining Coordinator Clark responded to the Manahan letter in an email dated April 15, 2021. After reviewing the information submitted by Attorney Manahan, Clark stated that "the Department maintains that an NOITC is not required for the activity proposed by Harold MacQuinn, Inc." AR at 319 (Tab 86). The email further explained:

6

> The Department understands that MacQuinn proposes to quarry approximately 1.024 acres, however, the Department has previously evaluated aerial photography dated 1967 which indicates that approximately 0.88 acres within said perimeter pre-dates January 1, 1970. Therefore, the Department currently understands and considers the proposed quarry to have approximately 0.144 acres jurisdictional, which would not require filing an NOITC.

*Id.*

Mr. Clark noted that the Department's interpretation was consistent with how it has "applied the Statute and associated Performance Standards since enactment in 1996." *Id.* The email concluded by saying that the Department considered "the jurisdictional matter of the Hall Quarry closed after considering all of the relevant facts." Nevertheless, the Department expressed a willingness to review "any new information" should it become available. *Id.*

On May 13, 2021, the Petitioners, Hans Utsch and Julia Hazzard Merck, filed a "Petition for Review of Final Agency Action or Failure to Act," allegedly pursuant to M.R.Civ.P. 80C. The Petitioners asserted that they "are individuals residing at 543 Sargeant Point Road in Mount Desert, Maine, which is located across Somes Sound from Hall Quarry and at which Utsch and Merck will be able to hear quarrying operations when the Project is operating, because sound carries across Somes Sound. Utsch and Merck will be adversely affected by the Project." Petition at ¶ 3.

The Administrative Record was timely filed, and briefing was completed on September 30, 2021. Although the petition for judicial review named only the Department as a respondent, Harold MacQuinn, Inc. has filed a memorandum in opposition to the petition as a party-in-interest. Oral argument was held on July 13, 2022. As the Petitioners have framed the issue,

it is purely a matter of statutory interpretation as to whether 38 M.R.S. § 490-Y *amended by* P.L. 2017, ch. 137, § A-11, "grandfathers" the area of a quarry excavated prior to January 1, 1970. In this connection, the Petitioners "do not challenge the DEP's determination that the excavation area includes 1.024 acres . . . ." Petitioners' Memorandum at 14, n.9. Rather, they challenge the Department's decision to deduct from that area of excavation 0.88 acres determined to have been excavated prior to January 1, 1970.

## Do the Petitioners Have Standing?

The parties dispute that the Petitioners have standing to bring this action. Specifically, the Department and MacQuinn contend that the Petitioners have merely alleged that they live across Somes Sound and will be able to hear the noise from Hall Quarry because the noise will carry across that body of water. They further maintain that this allegation is speculative and fails to demonstrate the "particularized injury" that needs to be shown to establish standing. For their part, the Petitioners assert that they have alleged enough to confer standing because they are in close proximity (about a mile across Somes Sound) from the quarry and would be affected if a NOITC were required since compliance with DEP's noise limits, if applicable, "would substantially reduce the noise that the project could produce." Petition at ¶ 8.

In considering the question of standing, the court has reviewed the following cases for guidance: *Blanchard v. Town of Bar Harbor*, 2019 ME 168, 221 A.3d 554; *Fox Island Wind Neighbors v. Dep't of Envtl. Prot.*, 2015 ME 53, 116 A.3d 940; *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, 2 A.3d 284; *Nergaard v. Town of Westport Island*, 2009 ME 56, 973 A.2d 735; *Sahl v. Town of York*, 2000 ME 180, 760 A.2d 266; *Brooks v. Cumberland Farms*, 1997 ME 203, 703 A.2d 844; *Forrester v. Westbrook*, 604 A.2d 31 (Me. 1992); *Harrington v. Biddeford*, 583 A.2d 695. *See also*

8

*Grant v. Zoning Hearing Bd.*, 776 A.2d 356 (Pa. Commw. Ct. 2001); *Benton County v. Friends of Benton County*, 642 P.2d 358 (Or. App., 1982); *State ex rel. Gardner v. Sailboat Key, Inc.*, 306 So.2d 616 (Fl. App., 3d Dist., 1974).

The court finds the issue of standing to be a close question. On the one hand, the Petitioners have provided no detailed information, by affidavit or otherwise, describing the harm or injury they will allegedly suffer, other than to state that they will hear noise from the quarry from across Somes Sound. The Petitioners have not provided any information as to the level or nature of the noise they expect or anticipate hearing if the quarry becomes operational without having to file a NOITC.

On the other hand, it is the court's understanding that the Petitioners are not able to provide that type of detailed information because Hall Quarry has not been operating for several years due to the imposition of a local moratorium. Moreover, unlike the situation in *Blanchard v. Town of Bar Harbor*, Hall Quarry does exist as a quarry; it is reasonable to conclude that it will generate noise from the excavation process and; the noise level likely will be less if Hall Quarry is required to file a NOITC.

On balance, it is the court's view that the Petitioners have sufficiently alleged a tangible harm such that they satisfy the standing requirement.

### Has There Been Final Agency Action?

The Petitioners assert that Mining Coordinator Clark's April 15, 2021 email response to the Manahan letter constituted "final agency action" and is appealable pursuant to Rule 80C and MAPA. The Petitioners rely particularly on the decision in *Raposa v. Town of York*, 2019 ME 29, 204 A.3d 129 for the proposition that the Manahan letter asked the Department to take concrete enforcement action requiring MacQuinn to file an NOITC, and the Department refused to do so. Moreover, the Petitioners emphasize that they

9

lack any remedy of judicial review of the Department's interpretation and application of section 490-Y if they cannot utilize Rule 80C and MAPA.

The Department and MacQuinn counter that the Clark email of April 15, 2021, like the other email communications with lawyers, engineers, consultants, municipal officials, and residents on the subject of Hall Quarry, amounted to no more than an advisory ruling or informal staff opinion that is not final agency action and not appealable. *See* 5 M.R.S. § 9001 and 06-096 C.M.R. Ch. 2, § 4.

From the court's perspective, there are certainly aspects of the Department's communications regarding Hall Quarry that have the attributes of being advisory in nature. It is clear from the Administrative Record that the Department, through the Office of the Mining Coordinator, routinely received inquiries from several interested persons concerning the ongoing controversy involving Hall Quarry, and regularly responded to those inquiries by explaining the Department's position on the law. Those inquiries, and the Department's responses to them, never took the form of an adjudicatory proceeding or an enforcement action but were much more informal. They have the flavor of a state employee responding to members of the public on a matter of interest with none of the trappings of an official proceeding.

On the other hand, the Manahan letter did not request an advisory ruling from the Department but sought the Department's commitment to require MacQuinn to submit an NOITC. *See* 06-096 C.M.R. Ch. 2, § 4(A)(7) ("The written request must be clearly captioned as 'REQUEST FOR ADVISORY RULING' and be directed to the division responsible for administering the statute or rule in question."). In addition, the term "final agency action" is defined to mean "a decision by an agency which affects the legal rights, duties or privileges of specific persons, which is dispositive of all issues, legal and

10

factual, and for which no further recourse, appeal or review is provided within the agency." 5 MR.S. § 8002(4). The Petitioners contend that their legal rights have been affected by the Department's decision to interpret 38 M.R.S. § 490-Y to "grandfather," or deduct from the 1-acre jurisdictional limit, the area at Hall Quarry excavated prior to January 1, 1970. Further, they argue (correctly it seems to the court), that they have no further recourse within the Department.[1]

The court is concerned that declaring the email response by Mining Coordinator Clark to be "final agency action" could have the unintended consequence of converting informal communications between a citizen and a governmental employee into final agency action subject to judicial review. Such a result could chill the willingness of the Department to respond to citizen inquiries and deprive both the Department and the public of the opportunity to informally resolve questions and avoid potential confusion and conflict.

In *Raposa v. Town of York*, the petitioners contacted the code enforcement officer (CEO) to complain that a neighbor's use of his land was inconsistent with a non-conforming use. The CEO responded by finding no violations by the neighbor. The petitioners appealed to the board of appeal (BOA), which held evidentiary hearings and ruled in favor of the neighbor. The petitioners (the Raposas) filed an 80B appeal to the Superior Court, which dismissed the appeal after concluding that the BOA's decision was advisory and non-appealable.

---

[1] At oral argument, counsel for the Department appeared to acknowledge that there was no way for the Petitioners to obtain further review within DEP and, short of an enforcement action against MacQuinn, there did not appear to be any mechanism for judicial review of the Department's interpretation and application of section 490-Y.

11

The Law Court held:

> . . . we hold today that a CEO's written decision interpreting a land use ordinance is appealable to the Board and in turn to the Superior Court – whether the CEO finds that there is a violation or is not a violation – so long as the ordinance does not expressly preclude appeal. In making this announcement, we recognize that such decisions often determine the use and value of property and that persons affected by these decisions would otherwise have no remedy. The applicable statutes and the terms of the ordinance – not the potential advisory nature of appellate review – define the court's jurisdiction.

2019 ME 29, ¶ 11.

The Law Court has not decided a case yet presenting the question of whether the reasoning of *Raposa* should be applicable in the context of Rule 80C appeals. In the context of this case, the court concludes that Mr. Clark's email of April 15, 2021 did constitute "final agency action," although the court recognizes that this too is a close call. The Clark email of April 15, 2021 was in direct response to the Manahan letter in which the Petitioners formally requested that the Department take affirmative action against MacQuinn by requiring it to submit an NOITC. The nature of the Manahan letter made it clear that the Petitioners were not seeking an advisory ruling. Rather, they were seeking action by the Department directed at MacQuinn and Hall Quarry.

The Department and MacQuinn argue that if the April 15, 2021 email is final agency action, so was the September 8, 2020 Stebbins email in response to the Katz inquiry. And if that is so, they further argue, the Petitioners failed to timely appeal that final agency action, which involved Hall Quarry. *See* 5 M.R.S. § 11002(3) (Any other aggrieved person has 40 days from date decision rendered to appeal). The court does not find

12

persuasive the argument that the Petitioners' appeal from the Clark email was untimely. The Katz letter and the Manahan letter were not identical inquiries. For example, the Katz letter sought to convince the Department that the area of excavation at Hall Quarry was over 2 acres. The Katz inquiry did not challenge the Department's decision to deduct the pre-1970 excavation area. While the Manahan letter also challenged the size of the area of excavation at Hall Quarry, it also directly disputed the Department's view that section 490-Y contained a grandfather provision.

Alternatively, if it is determined that no "final agency action" occurred in this matter, the court believes that declaratory relief interpreting section 490-Y is appropriate on the authority of *Help-U-Sell, Inc. v. Maine Real Estate Comm.*, 611 A.2d 981 (Me. 1992) and *Annable v. Board of Environmental Protection*, 507 A.2d 592 (Me. 1986).

### 38 M.R.S. 490-Y *amended by* P.L. 2017, c. 137, § A-11

The parties appear to agree that the meaning of the following statutory language is plain: ". . . a person intending to create or operate a quarry under this article must file a notice of intent to comply before the total area of excavation of rock or overburden on the parcel exceeds one acre excavated since January 1, 1970." They disagree, of course, as to what that plain meaning is.

The Petitioners describe the plain meaning of the statute as follows:

> if more than one acre is excavated after January 1, 1970, then a NOITC must be filed. There is nothing in this statutory language that provides, or even suggests, that if some portion of the excavated area was also excavated prior to 1970 then that pre-1970 area is 'grandfathered' and does not count toward the one-acre trigger. Rather, the 'total area of excavation' that is 'excavated since January 1, 1970' must be calculated, and a NOITC is required if that area is or will be over one acre.

13

Petitioners' Memorandum at 15 (emphasis in original).

Both the Department and MacQuinn focus their plain meaning arguments on the fact that section 490-Y describes an "area" of excavation, not the depth or volume of an excavation.

> The plain language of the statute refers to 'area' – and uses units of area ('one acre') - not *volume* or *depth*. A quarry in existence before 1970 but operated since that date is not an 'area . . . excavated since January 1, 1970.' Such a quarry was excavated before January 1, 1970. That continued operation of the quarry will increase the volume and depth of the pit is irrelevant for purposes of Section 490-Y, because the statute concerns itself exclusively with area. So long as the pit remains within the perimeter of the existing excavation, there is no 'area excavated since January 1, 1970' to which Section 490-Y might apply. And so long as any area excavated after January 1, 1970, does not exceed one acre, Section 490-Y does not require the operator to file a NOITC.

MacQuinn Memorandum at 13-14 (italicized in original). *See also* Departments' Memorandum at 20.

In the court's view, the meaning of section 490-Y, *amended by* P.L. 2017, ch. 137, § A-11, is ambiguous in that it is reasonably susceptible to different interpretations. Accordingly, it is appropriate to consider extrinsic aids in trying to divine and give effect to the Legislature's intent. After considering the history of section 490-Y, including its derivation from the Site Location of Development Law, as well as the testimony of then Deputy Commissioner Loyzim in support of the 2017 amendment, which the Department proposed, the court concludes that the statute does, in effect, grandfather that area of excavation of a quarry that took place prior to January 1, 1970.

The court starts with the point that the regulation of quarries was originally governed by the Site Location of Development Law of 1969. The parties do not appear to disagree on this point. It is undisputed that the Site Law exempted any developments in existence on January 1, 1970. P.L. 1969, ch. 571; 38 M.R.S. § 488. Thus, it makes sense that the Department would interpret the regulation of quarries under the Site Law as exempting or grandfathering those quarries in existence on January 1, 1970, as was Hall Quarry.

In 1996, however, the Legislature considered and ultimately enacted a bill (L.D. 1854) designed to remove certain mining activities from the Site Law (Article 6) and move them to a performance-based system under Article 7 (borrow pits, topsoil, etc.) and Article 8-A (quarries). L.D. 1854 was enacted as P.L. 1995, ch. 700. It is noteworthy to the court that Article 7 provides for an NOITC requirement for an excavation under that article if the area of excavation on the parcel equals 5 acres or more "excavated since January 1, 1970." 38 M.R.S. § 490-C. The quoted language is not found in the 1996 law that created Article 8-A dealing with quarries.

The court has searched the legislative history of the 1996 law in the hope that there might be some indication of what the Legislature was intending by the words "excavated since January 1, 1970," when they appeared in section 490-C. The court found nothing that even mentioned the issue.

The exemption or grandfather provision of the Site Law was an important component of that historic piece of legislation. *See generally, King Resources Co. v. Environmental Improv. Com.,* 270 A.2d 863, 865, 869 (Me. 1970). When the Legislature was considering the 1996 proposal, there was

15

debate on the floor of the House,[2] but there was no mention of the possibility that one of the consequences of the bill would be to withhold the exemption or grandfather provision for quarries under Article 8-A, but preserve it for other types of excavations under Article 7.[3] Given the importance of the exemption provision in the Site Law, one would expect that there would be some evidence of legislative intent to eliminate the pre-1970 exemption provision for quarries, if that were the intent of the Legislature. This lack of evidence leads the court to suspect that the omission of the language "excavated since January 1, 1970" in what became 38 M.RS. § 490-Y was an oversight.

This might explain why the Department continued to take the position that the pre-1970 exemption/grandfather provision remained applicable to Article 8-A quarries. This is what the Department told MacQuinn and others who inquired about Hall Quarry. It was not until 2015, after consulting with the Attorney General's Office and, presumably, realizing that the pre-1970 exemption had not made it into section 490-Y, that the Department changed its position. It then informed MacQuinn that it was no longer entitled to a deduction for any pre-1970 area of excavation.

In 2017, the Department introduced legislation to amend section 490-Y to include the language "excavated since January 1, 1970." While Deputy Commissioner Loyzim did not use words like "exemption" or "grandfather," she did state before the Joint Standing Committee that the purpose of adding the date to section 490-Y was to "align[ ] it with the original effective date of

---

[2] *See* Leg. Record, House, March 29, 1996, at H-1959 to H-1964.

[3] This seems unlikely considering the testimony of Martha Kirkpatrick, who was Director of the Bureau of Land and Water Quality and who spoke in support of L.D. 1854. She described Article 8-A as a "mirror image" of Article 7, and never said anything about the language "excavated since January 1, 1970," appearing in one article but not the other.

the law in 1970." She then said that the Attorney General's "guidance" was that "land excavated prior to 1970 was not affected by the Notice to Comply provisions." She concluded: "This does not affect any lands currently subject to regulation under the quarry standards, it just clarifies the language to match the interpretation that has been applied." Testimony of Melanie Loyzim, May 1, 2017.

The court reads this testimony from the Department's representative as the proponent of the bill, as saying that the language "excavated since January 1, 1970" was intended to reaffirm the exemption or grandfathering of the area excavated prior to January 1, 1970.

This has been the longstanding interpretation of section 490-Y and it is a reasonable one that is entitled to some deference. The court agrees with the Department's position that 38 M.R.S. § 490-Y refers to the "total area of excavation," and depth and volume are not relevant to the jurisdictional trigger for an NOITC. Further, the court interprets section 490-Y to mean that the 1+ acre jurisdictional threshold is met only if that 1+ acre area is excavated since January 1, 1970 and does not include the area excavated prior to January 1, 1970.

## CONCLUSION

The entry is:

The Petitioners' Rule 80C appeal, or alternatively their request for declaratory relief, is DENIED.

Dated: September 19, 2022

William R. Stokes
Justice, Superior Court

17